Vincent A. BROWN, Petitioner,

v.

BANK OF GALVESTON, NATIONAL
ASSOCIATION, Respondent.

No. 96–1078.

Supreme Court of Texas.

Argued Oct. 7, 1997.

Decided Feb. 13, 1998.

Kenneth C. Kaye, League City, for Petitioner.

G. William Rider, Galveston, Graig L. Stahl, Houston, Michael L. Wilson, Galveston, for Respondent.

SPECTOR, Justice, delivered the opinion for a unanimous Court.

Vincent Brown sued the Bank of Galveston, N.A., under the Deceptive Trade Practices–Consumer Protection Act. TEX. BUS. & COM.CODE §§ 17.41–17.63. The court of appeals held that Brown was not a consumer under the DTPA, and thus lacked standing to sue the Bank. 930 S.W.2d 140. We hold that there is no evidence that the Bank's acts were the producing cause of the injuries of which Brown complains and that certain acts did not violate the DTPA as a matter of law. Accordingly, we affirm the judgment of the court of appeals on different grounds.

## I. Factual and Procedural Background

In September 1984, Vincent Brown married in Jamaica, but his new wife, Hyacinth, did not return to Texas with him. A few weeks after his marriage, he purchased a lot in Galveston County; his name is listed on the earnest money contract as "V.A. Brown a single man." He also signed an earnest money contract with Marcelino Compean to build a house on the lot; again, his name is listed as "Vincent A. Brown a single man."

In November 1985, he contracted with Compean to build a house on the property. While Brown sought permanent financing from Fort Worth Mortgage Company, he signed a promissory note payable to Compean for $64,577.27. This amount included the balance due on the lot, which Compean paid to the lot's seller in consideration for a lien. Brown also executed a mechanic's lien contract in Compean's favor. Compean then executed a collateral assignment to the Bank of his interest in the Brown note and liens as security for interim financing.

During construction in the spring of 1986, Brown began to dispute whether Compean was building the house to the agreed-upon contract specifications. Compean walked off the job when the house was incomplete. During this time, the Bank was monitoring Compean's progress and sent letters to him, with courtesy copies to Brown, expressing concern at the lack of progress and urging Compean to complete the job. Compean returned to the job. Late that spring, Hyacinth moved to Texas to live with Vincent in his apartment.

In August, the Bank and Brown discussed additional problems with Compean not following specifications as he attempted to complete the job. The Bank and Brown, at the Bank's suggestion, each sent Compean a letter itemizing the deficiencies. In October,

the Bank's attorney sent Compean a letter threatening to foreclose on his note, again furnishing a copy to Brown.

In October, the Bank foreclosed on the interim financing note and purchased the note at the foreclosure sale, acquiring Compean's interest in the Brown note and liens. The Bank notified Brown of the foreclosure sale and made demand for payment on the note which had become due months before.

Later, Compean and Brown again reached an agreement for Compean to finish the job. In May 1987, the Browns moved into the house which was substantially complete. Unfortunately, disputes arose again, this time about who would pay several supplier and subcontractor bills. Some creditors filed mechanic's liens against the property, further encumbering it.

The Bank twice wrote Brown in 1987, asking him to close his permanent financing to pay off the note, and warning that if he did not, the Bank would foreclose. The Bank also wrote Fort Worth Mortgage urging it to close. However, permanent financing with Fort Worth Mortgage never closed. In December of 1987, the Bank foreclosed on the Brown note and liens and purchased the property for $65,000 at the foreclosure sale. The Bank initiated a forcible entry and detainer proceeding in justice court, which that court has abated pending this suit's outcome. In the ten years of intervening litigation, the Brown family has remained in the home.

In 1988, Brown sued the Bank, alleging wrongful demand resulting in the loss of permanent financing, wrongful foreclosure, and DTPA violations. The Bank counterclaimed for the deficiency on the note and attorney's fees.

Brown chose to submit only the DTPA cause of action to the jury. The jury found that the Bank had knowingly violated the DTPA and awarded $53,000 actual damages, $150,000 additional damages, and $51,085 attorney's fees. The Bank moved for a judgment notwithstanding the verdict. The trial court granted the Bank's motion, finding that there was no inextricable intertwining of the Bank and Compean that would confer con-

sumer status on Brown in his claim against the Bank.

Both parties appealed. Brown challenged the trial court's judgment n.o.v. and the Bank challenged the trial court's refusal to render judgment on its deficiency counterclaim and its attorney's fees claim. The court of appeals held that Brown was not a consumer under the DTPA and thus could not maintain a DTPA cause of action against the Bank. The court of appeals also held that the trial court erred in refusing to render judgment for the Bank on its deficiency counterclaim and to award attorney's fees, and reformed the judgment to do so. We affirm the court of appeals' judgment. However, we reach our conclusion by a different route.

## II. The DTPA Claim

■ A trial court may grant a judgment notwithstanding the verdict if there is no evidence to support one or more of the jury findings on issues necessary to liability. TEX.R. CIV. P. 301. In determining whether there is no evidence to support the jury verdict and thus uphold the judgment n.o.v., we consider the evidence in the light most favorable to the verdict and reasonable inferences that tend to support it. *State v. Biggar*, 873 S.W.2d 11, 13 (Tex.1994).

To maintain a DTPA cause of action against the Bank, Brown must show that (1) he is a consumer under the DTPA with respect to his claim against the Bank, (2) the Bank committed a false, misleading, or deceptive act under section 17.46(b) of the DTPA, breached an express or implied warranty, or engaged in an unconscionable action or course of action, and (3) these acts were the producing cause of Brown's actual damages. Act of May 10, 1973, 63rd Leg., R.S., ch. 143, 1973 Tex. Gen. Laws 322, *amended by* Act of May 10, 1977, 65th Leg., R.S., ch. 216, § 5, 1977 Tex. Gen. Laws 600, 603, *amended by* Act of May 16, 1979, 66th Leg., R.S., ch. 603, § 4, 1979 Tex. Gen. Laws 1327, 1329 (amended 1989) (current version at TEX. BUS. & COM.CODE § 17.50(a)); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex.1995). On appeal to this Court, Brown does not argue that the Bank was inextricably intertwined with Com-

pean; he instead argues that the Bank's own acts violated the DTPA.[1] Assuming, without deciding, that Brown is a consumer, we hold that the Bank's acts either were not the producing cause of Brown's damages or could not give rise to a DTPA violation.

■ Producing cause requires that the acts be both a cause-in-fact and a "substantial factor" in causing the injuries. *Union Pump Co. v. Allbritton,* 898 S.W.2d 773, 775 (Tex.1995); *Prudential Ins. Co. v. Jefferson Assocs. Ltd.,* 896 S.W.2d 156, 161 (Tex.1995). A producing cause is an efficient, exciting, or contributing cause, which in the natural sequence of events, produces injuries or damages. *Haynes & Boone v. Bowser Bouldin, Ltd.,* 896 S.W.2d 179, 182 (Tex.1995).

The jury found that Brown's damages were (1) the difference between the value the house would have had if it had been built as represented by Compean when the contract was signed and the value when Brown moved in, (2) the cost to complete the house, (3) the expenses already paid by Brown to partially complete the house, and (4) the amount Brown paid to Fort Worth Mortgage. The jury also found that the Bank had knowingly engaged in false, misleading, and deceptive acts, failed to comply with express or implied warranties, and engaged in an unconscionable course of action, and that the Bank's acts were the producing cause of Brown's damages. Even if the Bank's acts could support the jury's liability findings, there is no evidence that they were the producing cause of Brown's damages.

■ Brown identifies certain acts of the Bank that he contends support the jury's findings that the Bank violated the DTPA. But the acts he cites either were not the producing cause of the damages, were Compean's acts and not the Bank's, or could not have been a DTPA violation as a matter of law. First, Brown contends that the Bank made periodic inspections of the construction site and contacted him once problems arose, and that the Bank tried to get Compean to settle his disputes with Brown and complete

the house according to the specifications. None of these acts, however, can logically be considered an efficient, exciting, or contributing cause of the damages found by the jury. Brown also cites as evidence Compean's failure to pay suppliers, resulting in additional liens on the property. This failure was Compean's act, not the Bank's.

■ Finally, Brown asserts that the Bank represented that it had more legal rights than it actually did by insisting on full payment when the house was not yet complete. *See* TEX. BUS. & COM.CODE § 17.46(b)(12). But the mechanic's lien contract that secured the Brown note provides that in the event of partial or substandard completion of the house the holder of the debt and note ·

> shall have a valid and subsisting lien for said contract price, less such amount as would be reasonably necessary to complete said improvements according to said plans and specifications, *or* in such event the owner and holder of the hereinbefore mentioned indebtedness and note, *at his option,* shall have the right to complete said improvements, and the liens herein given shall inure to the benefit of said owner and holder.

(emphasis added). The contract's operable language is identical to language this Court has already interpreted in *Ogden v. Dickinson State Bank,* 662 S.W.2d 330 (Tex.1983), where the plaintiff also alleged a violation of section 17.46(b)(12). This contract provision only determines the amount secured under the lien. There is no DTPA violation for beginning foreclosure under a lien against a partially-completed house when the lien allows the lienholder the option to complete the house for the full value of the lien or risk foreclosing on a partially secured debt. *Ogden,* 662 S.W.2d at 332–33. Brown is still personally liable for the full amount under the note. *Id.* at 333. Thus, the Bank's demand for full payment was within its legal rights.

We hold that there is no evidence that the Bank's acts were the producing cause of Brown's damages and that as a matter of law

---

1. We note that the DTPA does not impose vicarious liability based on innocent involvement with business transactions. *Qantel Bus. Sys., Inc. v.* *Custom Controls Co.,* 761 S.W.2d 302, 305 (Tex. 1988) (citations omitted).

the Bank's demand for full payment under the note in this case did not violate the DTPA.

## III. Validity of the Lien

Brown also asserts that the mechanic's lien is invalid because it was a lien against his wife's homestead that she did not sign and because Compean furnished materials and labor before the parties made the contract. *See* TEX. CONST. art. 16, § 50 (amended 1995); Act of May 26, 1983, 68th Leg., R.S., ch. 576, § 1, 1983 Tex. Gen. Laws 3475, 3543 (amended 1997) (current version at TEX. PROP.CODE § 53.254).

■■■ Whether property is a homestead presents a fact question. *See Gregory v. Sunbelt Sav., F.S.B.,* 835 S.W.2d 155, 158–59 (Tex.App.—Dallas 1992, writ denied); Brown did not request a jury question on the fact issue of his wife's homestead rights. Thus, unless Hyacinth's homestead rights are conclusively established, Brown waived this issue. *See* TEX.R. CIV. P. 279; *Akin v. Dahl,* 661 S.W.2d 911, 913 (Tex.1983). Brown's statement that he was "a single man" on at least three of the documents admitted in this case is enough to raise a fact question concerning Hyacinth's homestead rights. *See Balcomb v. Vasquez,* 241 S.W.2d 650, 655–56 (Tex.Civ.App.—El Paso 1951, writ ref'd n.r.e.) (holding that plaintiff failed to prove a homestead as a matter of law when he represented he was a single man, thus raising a fact issue). Accordingly, Brown did not conclusively establish Hyacinth's homestead rights, and he cannot rely upon them on appeal. *See T.O. Stanley Boot, Co., Inc. v. Bank of El Paso,* 847 S.W.2d 218, 222–23 (Tex.1992).

■■■ Brown also asserts that the mechanic's lien is invalid because Compean started work on the property before he made the contract attaching the lien. To attach a lien on a homestead, the parties must make the contract before the contractor furnishes any materials or performs any labor. Act of May 26, 1983, 68th Leg., R.S., ch. 576, § 1, 1983 Tex. Gen. Laws 3475, 3543 (amended 1997) (current version at TEX. PROP.CODE § 53.254). It is undisputed that the mechanic's lien contract Brown signed states that it was execut-

ed "before any labor has been performed and before any material has been furnished." The Bank relied upon this assertion when it accepted the lien as security for its interim financing. When an innocent third party relies upon the validity of a lien that includes the parties' recitations that no labor or materials were furnished before the execution of the contract, those parties are estopped from later contesting the validity of the lien as a defense to foreclosure. *Ackerson v. Farm & Home Sav. & Loan Ass'n,* 77 S.W.2d 559, 561 (Tex.Civ.App.—San Antonio 1934, writ ref'd). Thus, even if Compean began work before the parties signed the contract, Brown is estopped from asserting the invalidity of the lien on this basis.

## IV. The Deficiency and Attorney's Fees Claims.

■■■ Finally, Brown contests the court of appeals' deficiency and attorney's fees awards. The court of appeals awarded the deficiency, holding that the evidence conclusively established the amount of the deficiency under the note, for which Brown was still personally liable regardless of how much of the debt was secured by the mechanic's lien. 930 S.W.2d at 145 (citing *Ogden,* 662 S.W.2d at 333). Brown protests that the parties hotly disputed the amount at trial. However, the record shows that the deficiency was not in dispute. Instead, the disputed issues at trial were the cost to finish the partially-completed home and the specifications for the completed home under the construction contract between Brown and Compean. Brown is still personally liable for the full amount due under the note. *See Ogden,* 662 S.W.2d at 333. Cost to complete is only relevant to determining how much debt the lien secures. Accordingly, we affirm the court of appeals' holding on the deficiency judgment.

■■■ We also hold that the court of appeals properly awarded attorney's fees because the Bank established the amount. The Bank offered uncontradicted testimony on the amount of its attorney's fees. Brown had the means and opportunity of disproving the testimony and failed to do so. *See Ragsdale*

*v. Progressive Voters League,* 801 S.W.2d 880, 882 (Tex.1990); *Snoke v. Republic Underwriters Ins. Co.,* 770 S.W.2d 777 (Tex. 1989).

Because there is no evidence that the alleged wrongful acts of the Bank were the producing cause of Brown's damages and certain acts of the Bank could not give rise to DTPA violations, the trial court correctly rendered judgment n.o.v. Accordingly, we affirm the judgment of the court of appeals.