Barbara J. SCOTT, Appellant,

v.

Zeb F. POINDEXTER, Jr., Zeb F. Poindexter III, and Charles A. George Dental Society, Appellees.

No. 04–98–00101–CV.

Court of Appeals of Texas, San Antonio.

March 21, 2001.

Deborah Stanton Burke, James T. Liston, Cook, Butler & Doyle, L.L.P., Lonica B. Poindexter, Ralphaell V. Wilkins, The Wilkins Law Firm, P.C., Houston, for Appellant.

Joseph R. Willie, II, Willie, Willie & Associates, Charles A. Daughtry, Mieszkuc, Daughtry, & Scott, P.C., Houston, for Appellee.

Sitting PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice, ALMA L. LÓPEZ, Justice, CATHERINE STONE, Justice, PAUL W. GREEN, Justice, SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice, AUSTIN McCLOUD, Justice.[1]

## ON MOTION FOR REHEARING

### Justice CATHERINE STONE.

On original submission of this case we noted that "[t]his appeal presents still another question about the finality of a partial summary judgment which grants more relief than requested and appears final because of the inclusion of a 'Mother Hubbard clause.'" During the pendency of Appellant's motion for rehearing en banc, the Texas Supreme Court issued an opinion intended to clarify the effect of a Mother Hubbard clause in a summary judgment. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 44 Tex.Sup.Ct.J. 364 (2001). We deny Appellant's motion for rehearing en banc; however, we substitute this opinion and judgment for our opinion and judgment of November 30, 1999.

Dr. Barbara Scott appeals from a judgment notwithstanding the verdict entered in her defamation claim against Dr. Zeb Poindexter, Jr., and Dr. Zeb Poindexter III ("the Poindexters"). On appeal Scott contends the evidence was legally suffi-

cient to support the jury's findings of actual malice and damages. The Poindexters reply that Scott failed to prove actual malice, and that in any event, the trial court erred in proceeding to trial because it lost jurisdiction after entry of a summary judgment. Poindexter III also appeals the trial court's denial of his claim for indemnity against the Charles A. George Dental Society. We affirm the judgment of the trial court as to Scott, but we reverse the judgment and remand the cause as to indemnification.

## Factual Background

After a 1989 car accident left Dr. Scott injured and unable to practice dentistry, she sought financial assistance from some of her professional peers. The executive board of the Charles A. George Dental Society ("the Society") voted to secure a $10,000 loan for Scott, if she would put her car up as collateral. Scott agreed and obtained the loan.

Scott and the Poindexters attended a meeting of the Society on September 11, 1990. Scott contends that Poindexter III told the Society members that Scott had failed to repay her loan from the Society. Poindexter III argues that he merely brought the issue of a defaulted loan to the Society's attention; it was Scott who identified the loan as being hers in an effort to explain that she had not defaulted. Poindexter, Jr. circulated documents purporting to show that Scott had defaulted on the loan, but in reality the documents did not pertain to Scott's loan. Scott then left the meeting very upset.

Scott contends that she paid off the loan almost a year earlier than required under

---

1. Justice Austin McCloud was temporarily assigned by Chief Justice Phillips of the Texas Supreme Court to sit with this court to consider this appeal. *See* Tex.R.App.P. 41.2(b).

the terms of the contract and that at the time of the meeting she was not in default. The Poindexters argue, however, that Scott was in default on her loan until the day of the meeting and that she had been late in payment at least five times prior. Poindexter III was the Society's treasurer and testified that he felt it was his duty to inform the Society members of delinquent loans.

## Jurisdictional Challenge

■ At trial and on appeal, the Poindexters claimed that a partial summary judgment entered by the trial court in 1993 was in fact a final summary judgment that was not timely appealed. Accordingly, the Poindexters argued the trial court was without jurisdiction to proceed to trial in 1997, and that this court lacked jurisdiction to entertain Scott's appeal. Their argument was based upon *Mafrige v. Ross,* 866 S.W.2d 590 (Tex.1993), *overruled by Lehmann v. Har–Con Corp.,* 39 S.W.3d 191, at 203–04. We conclude, as we did in our original opinion, that the partial summary judgment entered by the trial court in 1993 was not a final appealable judgment.

A review of the proceedings is necessary. Scott alleged five causes of action in her original petition: slander; slander per se; intentional infliction of emotional distress; negligent infliction of emotional distress; and gross negligence. The Poindexters sought and obtained partial summary judgment on the slander per se claim in March 1992. A second motion for partial summary judgment addressing the

negligent infliction of emotional distress claim was filed but was not set for a hearing. In January 1993 the Poindexters again sought summary judgment with a document entitled "Motion for Final Summary Judgment," requesting summary judgment on Scott's claim for intentional infliction of emotional distress. The motion also recites that the slander cause of action is no longer pending as a result of the first partial summary judgment.[2] Finally, the motion states that the earlier motion for partial summary judgment on negligent infliction of emotional distress is pending. On January 22, 1993, the trial court entered a judgment entitled "Final Summary Judgment," with the word "Final" struck through and initialed by the trial judge (the "January 1993 summary judgment"). On the bottom left-hand corner of the one-page document is the notation "PARTIAL SUMMARY JUDGMENT." The judgment recites the court considered the "motion for *final* summary judgment" (emphasis added), and is of the opinion that "the motion should be granted." The judgment recites that Scott take nothing on her cause of action for intentional infliction of emotional distress. Finally, the judgment states that "all relief requested in this cause and not expressly granted is denied."

Following entry of the January 1993 summary judgment, Scott filed a motion for reconsideration or alternatively, motion for new trial; however, no written order disposing of this motion was signed during the trial court's period of plenary power.[3]

---

**2.** This recital is incorrect. The Poindexters never sought summary judgment on the slander cause of action; the first motion for partial summary judgment addressed only the slander per se claim, and that is the only ground upon which the first partial summary judgment was granted.

**3.** Scott refers this court to a docket entry indicating that the trial court withdrew the prior summary judgments, granted Scott 15 days to replead, and granted a new trial. However, we are constrained from considering docket entries. *Faulkner v. Culver,* 851 S.W.2d 187, 188 (Tex.1993). Additionally, an oral pronouncement and docket entry do not

A written order setting aside the two prior summary judgments and granting a new trial was signed on June 8, 1993, 106 days after the trial court signed the January 1993 summary judgment. In September 1993 the court entered an "Order of Clarification" declaring that the earlier summary judgments were partial interlocutory judgments.

The Poindexters argued in the trial court, as they do on appeal, that: (1) the January 1993 summary judgment was a final summary judgment; (2) the trial court's last day of plenary power was June 7, 1993, 105 days after it signed the January 1993 summary judgment; and (3) the trial court was without jurisdiction to grant a new trial on June 8, 1993, 106 days after it signed the January 1993 summary judgment. The Poindexters' claim is based on their interpretation of the Supreme Court's decision in *Mafrige*, and on the effect of the Mother Hubbard clause ("all relief requested in this cause and not expressly granted is denied") in the January 1993 summary judgment.

■ *Mafrige* has been overruled to the extent it held that inclusion of a Mother Hubbard clause in a judgment rendered without a conventional trial rendered the judgment final for purposes of appeal. *Lehmann*, 39 S.W.3d 191, at 203–04. Rather, when there has not been a conventional trial on the merits, as was the situation in this case in 1993, an order or judgment is not final and appealable "unless it actually disposes of every pending claim and party or unless it clearly and unequivocally states that it finally disposes of all claims and all parties." *Id.* at 205. The 1993 summary judgment did not dispose of every pending claim, nor did it eliminate the requirement of a signed written

unequivocally state that it disposed of every claim. To the contrary, the summary judgment contains language evidencing an intent to enter a partial summary judgment. We therefore reject the Poindexters' claims that the trial court was without jurisdiction to proceed to trial, and we thus address the merits of the appeal.

### Entry of Judgment N.O.V.

Scott's case proceeded to jury trial and resulted in jury findings that the Poindexters made defamatory statements about Scott, the statements were not substantially true, and the statements were made with actual malice. The jury awarded Scott $100,000 in damages. The Poindexters sought a judgment notwithstanding the verdict, claiming the communication in question was privileged, and that there was no evidence of either actual malice or monetary damages. The court granted the motion without specifying the grounds.

■ To grant a judgment n.o.v., the court must determine that there is no evidence upon which the jury could have made the findings relied upon. *Brown v. Bank of Galveston, Nat'l Ass'n*, 963 S.W.2d 511, 513 (Tex.1998). The record is reviewed in the light most favorable to the findings, considering only the evidence and inferences that support the findings and rejecting the evidence and inferences contrary to the findings. *See id.* The court may reverse and render only if no more than a scintilla of evidence supports the verdict. *Horton v. Horton*, 965 S.W.2d 78, 85 (Tex.App.—Fort Worth 1998, no pet.).

■ Scott does not contest that the Poindexters were acting under a qualified privilege when the statements in question

order under Tex.R.Civ.P. 329b.

were made. Damages can be recovered for privileged defamatory statements only when actual or express malice is proved as a fact. *Wal–Mart Stores, Inc. v. Odem,* 929 S.W.2d 513, 525 (Tex.App.—San Antonio 1996, writ denied). Given the case law construing actual malice, we conclude the trial court could properly have entered the judgment n.o.v. based on Scott's failure to prove that the Poindexters acted with actual malice.

■■■ Actual malice, as used in defamation cases, "does not include ill will, spite, or evil motive; but rather requires 'sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.' " *Casso v. Brand,* 776 S.W.2d 551, 558 (Tex.1989) (quoting *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968)). Actual malice has also been defined as the making of a statement with the knowledge that it is false or with reckless disregard of whether it is true. *Welch v. Doss Aviation, Inc.,* 978 S.W.2d 215, 224 (Tex.App.—Amarillo 1998, no pet.). The plaintiff must offer clear and convincing affirmative proof of actual malice to support a recovery. In most cases, a plaintiff will have to obtain this proof from circumstantial evidence. *See Frank B. Hall & Co., Inc. v. Buck,* 678 S.W.2d 612, 621 (Tex.App.—Houston [14th] Dist.1984, writ ref'd n.r.e.).

■■■ Determining whether actual malice existed is a highly fact-specific question. Scott contends that the following evidence supports the jury's finding of actual malice:

- Dr. Gary Radford's testimony that Poindexter Jr. called him the day of the meeting and inquired about Scott's loan. Radford informed Poindexter that Scott had assured him that she had been paying her loan on a monthly basis and was not in default.

- The papers that the Poindexters circulated at the meeting did not refer to Scott by name, and ultimately were determined to contain information about the Society's loan, not Scott's.

- Prior to making the statements at the meeting, the Poindexters did not have any documents indicating that Scott was in default on her loan.

- Prior to making the statements, Poindexter Jr. telephoned Standard Savings & Loan, but discovered nothing about the loan being in default.

- The Poindexters did not talk to Scott about her loan prior to making the statements.

■■■ Even if all of these actions are true, they do not rise to the level of actual malice. A defendant's failure to investigate the truth or falsity of a statement before it is published has been held insufficient to show malice. *Schauer v. Memorial Care Systems,* 856 S.W.2d 437, 450 (Tex. App.—Houston [1st Dist.] 1993, no writ); *Mayfield v. Gleichert,* 484 S.W.2d 619, 627 (Tex.Civ.App.—Tyler 1972, no writ). The failure to read relevant available information before making a defamatory statement is not evidence of actual malice. *See Dun & Bradstreet, Inc. v. O'Neil,* 456 S.W.2d 896, 901 (Tex.1970) (failure to check information located in file on agent's desk). In short, actual malice is more than ill will; "it is the making of a statement with knowledge that it is false, or

with reckless disregard of whether it is true." *Hagler v. Proctor & Gamble Mfg. Co.*, 884 S.W.2d 771, 772 (Tex.1994). Although the record may support a finding that the Poindexters were careless or negligent, there is no evidence that they acted with actual malice. Accordingly, we overrule Scott's first issue. In light of this ruling, we need not reach Scott's issue regarding damages.

### Poindexter's Indemnity Claim

■ In February 1997, before the present suit was tried, Poindexter III obtained court permission to file a third-party petition seeking indemnity from the Society. Poindexter filed his petition seeking a judicial declaration that he was acting within the scope of his duties as an officer of the Charles A. George Society when he made the alleged defamatory statement, and thus claimed the Society owed him reimbursement for his litigation expenses. On September 2, 1997, the trial court ordered separate trials for the third-party indemnity claim and the defamation suit. On the next day, however, the trial court signed an order ruling that the indemnity claim was time-barred under sections 33.004(d) and 16.069(b) of the Civil Practice and Remedies Code. This order, which was not a final appealable order, was incorporated into the September 18, 1998 final judgment. Poindexter III cross-appeals from this judgment.

■ Poindexter III asserts that as an officer of the Society he had a right to indemnity from the Society under the Texas Non–Profit Corporation Act, which provides in relevant part as follows:

> A corporation shall indemnify a director against reasonable expenses incurred by him in connection with a proceeding in which he is a named defendant or respondent because he is or was a director if he has been wholly successful, on the merits or otherwise, in the defense of the proceeding.

TEX.REV.CIV.STAT.ANN. art. 1396–2.22A (H) (Vernon 1997). A plain reading of this statute indicates that the right to indemnification arises upon completion of the underlying proceeding, when it can be determined that the director was "wholly successful." As noted in *Texas Soc'y v. Fort Bend Chapter*, 590 S.W.2d 156, 164 (Tex.Civ.App.—Texarkana 1979, writ ref'd n.r.e.), the statute permits indemnification when the director prevails and this cannot be known until the underlying litigation is resolved. *See also Bayoud v. Bayoud*, 797 S.W.2d 304, 317 (Tex.App.—Dallas 1990, writ denied) (holding that right to indemnity does not arise until judgment is either rendered or paid). Accordingly, we hold the trial court erred in ruling that Poindexter III's indemnification was time barred.

The trial court's judgment not withstanding the verdict that Barbara Scott take nothing is affirmed; the judgment dismissing the indemnification of Zeb F. Poindexter III is reversed and that cause is remanded to the trial court for a determination of Poindexter's indemnification rights.

Concurring and Dissenting opinion by: Chief Justice Phil HARDBERGER, joined by Justice LÓPEZ

HARDBERGER, Chief Justice, joined by Justice LÓPEZ, concurring and dissenting on Appellant's Motion for Rehearing En Banc.

*"A good name is better than riches."*

CERVANTES, DON QUIXOTE Part II, Book II, chpt. 33 (1615).

I fully concur in the majority's analysis of both the jurisdictional and indemnification issues raised in this appeal. I must respectfully dissent, however, from the

majority's holding that the trial court properly granted the Poindexters' motion for judgment notwithstanding the verdict. The majority's holding is based on its conclusion that less than a scintilla of evidence was introduced to support the jury's finding of actual malice.

Prior to the meeting, the Poindexters had information from Dr. Radford that Scott's loan was not in default. In addition, the only "proof" that the Poindexters presented at the meeting to support their accusation was two default notices from the bank; however, Poindexter III testified that he and his father discussed that the Society had two loans outstanding prior to the meeting, and Poindexter III further testified that he knew the number on the bank notices did not match the number for Scott's loan. Finally, the Poindexters testified that they did not know what the situation was regarding the loans when they introduced the topic as new business; however, instead of introducing the topic by inquiring into the situation, they proceeded to accuse Scott of being in default.

A trial court may only grant a judgment notwithstanding the verdict if there is no evidence to support the jury's finding. More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997). The Texas Supreme Court has recognized that the defendant is unlikely to provide direct testimony to prove actual malice. *Casso v. Brand*, 776 S.W.2d 551, 558–59 (Tex.1989). For this reason, we look to the information known to the defendant to determine if it demonstrates a high degree of awareness of the probable falsity of the statements made in light of that information.

In this case, the Poindexters knew that two loans were outstanding and the loan number on the default notices did not match Scott's loan. In addition, Dr. Radford told the Poindexters that Scott's loan was not in default. Furthermore, the Poindexters admitted that they did not know the true situation regarding the loans prior to the meeting. The jury could rely on this evidence to support their finding that the Poindexters acted with reckless disregard for whether their accusation was true, and I would conclude that this evidence is more than a scintilla of evidence to support the jury's finding of actual malice.

The majority's conclusion that no evidence existed to support the jury's finding is understandable in view of the Texas Supreme Court case law interpreting the actual malice requirement. The Poindexters assert in their brief that: "the Texas Supreme Court has considered the actual malice issue eleven times. In nine of those instances, the court has ruled that actual malice does not exist as a matter of law. Only twice has the Court found there to be a disputed fact issue on the point but those two cases [citations omitted] were overruled by the Court in *Casso v. Brand* [citation omitted]." Despite this precedent, actual malice has a defined legal meaning, and, in my opinion, more than a scintilla of evidence was presented in this case to support the jury's finding of actual malice.