NUMBER 13-06-282-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 
 

THE CADLE COMPANY AND 

CADLEWAY PROPERTIES, INC., Appellants,


v.
 


MARY ESTER ORTIZ AND 

DAVID ORTIZ, Appellees.

 




On appeal from the 24th District Court of Calhoun County, Texas.


 




O P I N I O N



Before Justices Yañez, Rodriguez, and Benavides 


Opinion by Justice Benavides



 This appeal arises from a wrongful foreclosure lawsuit. Mary Ester Ortiz and David
Ortiz, appellees, obtained a judgment invalidating a lien on their homestead held by The
Cadle Company and Cadleway Properties, Inc. ("Cadle"), appellants. The trial court
declared a wrongful foreclosure and also awarded the Ortizes attorneys' fees. The issues
presented are (1) whether a mechanic's lien against a marital homestead is valid if the lien
documents are not signed by both spouses, and (2) whether attorneys' fees are available
in a foreclosure case wherein title ultimately depends upon a deed's construction. We hold
that the mechanic's lien is invalid, and attorneys' fees are available. Accordingly, we affirm
the district court's judgment on both issues.

I. Background

 Mary Ester Ortiz and David Ortiz married each other in 1979 and divorced later that
year. They remarried in 1989 and have been continuously married to each other since
then. (1) On February 2, 1994, Ms. Ortiz acquired a house, but she did not include her
husband's name on the assumption deed. Ms. Ortiz deliberately omitted her husband's
name in an effort to protect the property from possible creditors who sought child support
payments from Mr. Ortiz. The couple has occupied the home as their marital homestead
from 1994 until the present.

 On June 13, 1996, after multiple meetings with a salesman named Dean Bostick,
the Ortizes contracted for improvements to their home with National Home Services
("NHS"). Ms. Ortiz signed a note, a Contract for Labor and Materials, and a trust deed for
the improvements. As she had done on the original assumption deed, she again omitted
her husband's name on the documents.

 In order to finance the home improvements, Ms. Ortiz applied for credit from the
Department of Housing and Urban Development ("HUD"). She is explicitly marked as
"unmarried" on the HUD credit application. According to Ms. Ortiz, this was an error
attributable to Mr. Bostick, who completed the application for her after she signed it in
blank. Ms. Ortiz also claimed that Mr. Bostick had met her husband and should have
known that they were a married couple. (2)

 On December 23, 1998, NHS conveyed the note and the trust deed to Cadle. After
making payments to Cadle for several years, the Ortizes defaulted. Cadle foreclosed on
the Ortizes' home on June 1, 2004. 

 The Ortizes then filed suit against Cadle, alleging wrongful foreclosure and seeking
attorneys' fees under the Texas Uniform Declaratory Judgments Act ("DJA"). Tex. Civ.
Prac. & Rem. Code Ann. § 37.009 (Vernon 2006). The Ortizes argued that the foreclosure
ought to be rescinded because a homestead exemption attached to the property. Cadle
pleaded an affirmative defense, conceding that the property was a homestead, but arguing
that the Ortizes had waived their homestead rights by committing a fraudulent
misrepresentation intended to deceive creditors. After a bench trial, the court invalidated
Cadle's lien and declared a wrongful foreclosure. The court also awarded the Ortizes
$23,775.92 in attorneys' fees. Findings of fact and conclusions of law were not filed, nor
did Cadle request them. Cadle now appeals.

II. Standard of Review

 When neither findings of fact nor conclusions of law have been filed or requested,
the judgment of the trial court after a bench trial implies all necessary findings of fact to
support itself. Schoeffler v. Denton, 813 S.W.2d 742, 745 (Tex. App.-Houston [14th Dist.]
1991, no writ). A trial court's implied findings of fact in a bench trial have the same force
and dignity as a jury's verdict upon jury questions. Anderson v. City of Seven Points, 806
S.W.2d 791, 794 (Tex. 1991). Therefore, the trial court's implied findings are similarly
reviewed for legal and factual sufficiency of the evidence. Catalina v. Blasdel, 881 S.W.2d
295, 297 (Tex. 1994); see also City of Keller v. Wilson, 168 S.W.3d 802, 807 (Tex. 2005)
(legal sufficiency of evidence is to be reviewed in the light most favorable to the challenged
finding, crediting favorable evidence if a reasonable fact-finder could and disregarding
contrary evidence unless a reasonable fact-finder could not); Ortiz v. Jones, 917 S.W.2d
770, 772 (Tex. 1996) (fact findings must only be overturned if they are so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust).

 If a party is challenging a finding regarding an issue upon which that party had the
burden of proof, the moving party must demonstrate that the adverse finding is against the
"great weight and preponderance of the evidence." Dow Chem. Co. v. Francis, 46 S.W.3d
237, 242 (Tex. 2001) (per curiam). In reviewing a challenge that the jury finding is against
the great weight and preponderance of the evidence, we must first examine the record to
determine if there is some evidence to support the finding. Id. at 241. If such evidence
exists, we must then determine, in light of the entire record, whether the finding is so
contrary to the overwhelming weight and preponderance of the evidence as to be clearly
wrong and manifestly unjust. Id. We may not disregard the finding of the trial court and
substitute our own finding unless the evidence conclusively establishes a different finding. 
Ponce v. Sandoval, 68 S.W.3d 799, 806 (Tex. App.-Amarillo 2001, no pet.).

 Finally, the determination of whether attorneys' fees are available in a particular
case is a question of law, which we review de novo. Holland v. Wal-Mart Stores, Inc., 1
S.W.3d 91, 94 (Tex. 1999).

III. The Validity of the Lien

 The State of Texas famously recognizes one of the broadest homestead
exemptions in the United States. See Jerry Patterson, Home Equity Reform in Texas, 26
St. Mary's L.J. 323, 324 (1994) ("the concept of Texas homestead protection has grown
to near-mythical proportions"). Homestead rights have traditionally enjoyed great
protection in Texas jurisprudence, and statutes which affect homestead rights are liberally
construed to protect the homestead. See Florey v. Estate of McConnell, No. 03-04-00318-CV, 2006 Tex. App. LEXIS 4971, at *6 (Tex. App.-Austin June 9, 2006, pet. denied). 

 Nevertheless, exceptions to the homestead exemption do exist. Among them, the
Texas Constitution provides that a marital homestead is "protected from forced sale for the
payment of all debts except for . . . work and material used in constructing new
improvements thereon if . . . the work and material are contracted for in writing, with the
consent of both spouses." Tex. Const. art. XVI, § 50(a)(5)(A) (emphasis added).

 Under the existing homestead law, Cadle's lien on the Ortiz home must be found
invalid because it depends upon three documents--the assumption deed, the note, and
the trust deed--that are not signed by both Mr. and Ms. Ortiz as the Texas Constitution
explicitly requires. Cadle attempts to overcome the two-spouse signature requirement with
an affirmative defense: Cadle argues that Ms. Ortiz misrepresented her marital status by 
omitting Mr. Ortiz's name from the lien documents, and thus a finding that the Ortizes did
not waive their homestead rights by deliberately misrepresenting creditors is against the
great weight and preponderance of the evidence. We disagree.

 Texas law recognizes that homestead protection can dissolve if the owners
deliberately misrepresent their marital status in order "to defeat the rights of an innocent
party who, in good faith, without notice, for valuable consideration, has acquired valid
liens." Nat'l Bond & Mortgage Corp. v. Davis, 60 S.W.2d 429, 434 (Tex. 1933). Such an
assertion of misrepresentation is an affirmative defense upon which the defendant bears
the burden of proof. Texas Farmers Ins. Co. v. Murphy, 996 S.W.2d 873, 879-80 (1999). 
If an individual affirmatively misrepresents himself or herself on documents as single when
he or she is married, a question arises concerning whether the couple's homestead rights
have been waived. Brown v. Bank of Galveston, Nat'l Ass'n, 963 S.W.2d 511, 515 (Tex.
1998). 

 In Brown, for example, Vincent Brown, a married man, purchased a lot and built a
home in Galveston by signing earnest money contracts as "V.A. Brown, a single man" and
"Vincent A. Brown, a single man." Id. at 512. He made no mention of his wife, Hyacinth,
on any of the real property documents. Id. When the holder of a mechanic's lien
attempted to enforce the lien on the property, Brown claimed a violation of Hyacinth's
homestead exemption. Id. However, Brown did not obtain a jury question regarding
Hyacinth's homestead rights. Id. 

 On appeal, Brown was required to show that Hyacinth's homestead rights were
conclusively established by the record. Id. The supreme court rejected Brown's argument
because "Brown's statement that he was 'a single man' on at least three of the documents
admitted in this case is enough to raise a fact question concerning Hyacinth's homestead
rights." Id. at 515. 

 Brown suggests that homestead protection is called into question when a person
affirmatively lies about his or her marital status. See id. However, although Brown's
holding prohibits misrepresentation, it does not imply that a person is required to list the
name of his or her spouse on real property documents in order for homestead status to
attach. Texas law is clear that possession of a homestead interest is not dependent upon
ownership; a person is permitted to hold homestead rights in his or her spouse's separate
property. Tex. Fam. Code Ann. § 5.001 (Vernon 2006). A contention that an instrument
(such as a deed) is void under homestead laws may be asserted by any person whose
homestead rights are affected, regardless of whether the person is a signed party to the
instrument. Florey, 2006 Tex. App. LEXIS 4971, at *9.

 The evidence shows that the home was purchased during the marriage and that the
Ortizes occupied the home as their homestead. Rather than represent herself as
"unmarried" or "single" on any of the documents Cadle relied upon, Ms. Ortiz merely signed
her name and made no mention of her husband. (3) This is different than, for example, the
affirmative misrepresentation of the married man in Brown who falsely signed his name
"Vincent Brown, a single man." See Brown, 963 S.W.2d at 512. Moreover, because a
person may hold a homestead interest in his or her spouse's separate property, it is not
necessary to have one's name on real property documents in order to maintain a
homestead interest in the property. Tex. Fam. Code Ann. § 5.001. Thus, the fact that Mr.
Ortiz's name was not on the assumption deed, note, or trust deed does not mean that he
lacks a homestead interest in the Ortiz household. Regardless of Cadle's ability to defeat
Ms. Ortiz's homestead exemption, it has shown nothing to defeat Mr. Ortiz's homestead
exemption.

 We hold, therefore, that Cadle has not demonstrated that the great weight and
preponderance of the evidence favors a reversal of the trial court's implied finding that the
Ortizes did not waive their homestead rights. The mechanic's lien asserted by Cadle
against the Ortiz homestead is invalid because the relevant documents do not meet the
statutory requirement of having been signed by both spouses. Cadle's asserted lien does
not supersede the Ortizes' homestead exemption, and thus the foreclosure on the home
was wrongful. (4)

IV. Trespass to Try Title

 Having found that Cadle wrongfully foreclosed on the Ortiz homestead, we now turn
to the question of whether this wrongful foreclosure suit is a "trespass to try title" or an
action properly brought under the DJA. Tex. Civ. Prac. & Rem. Code Ann. § 37.001-.011
(Vernon 2006). The answer to this question determines whether attorneys' fees are
available. Martin v. Amerman, 133 S.W.3d 262, 264 (Tex. 2004). 

 Under the Texas Property Code, a trespass to try title is used to determine title to
lands, tenements, or other real property. Tex. Prop. Code Ann. § 22.001 (Vernon 2006). 
An action under the property code is different from an action under the DJA, which
provides that "a person interested under a deed . . . may have determined any question
of construction or validity arising under the instrument . . . and obtain a declaration of
rights, status, or other legal relations thereunder." Tex. Civ. Prac. & Rem. Code Ann. §
37.004. The recovery of attorneys' fees under a trespass to try title is barred because it
is not provided for by the property code. Martin, 133 S.W.3d at 264. In contrast, the DJA
specifically allows for recovery of attorneys' fees. Tex. Civ. Prac. & Rem. Code Ann. §
37.009. The Texas Supreme Court requires courts to distinguish between the two types
of actions, holding that a party may not seek attorneys' fees by artfully pleading a trespass
to try title action under the DJA. Martin, 133 S.W.3d at 267. 

 In Martin, the supreme court held that cases which "necessarily involve the question
of title," such as boundary disputes, are considered trespass to try title actions. Id. 
Although the supreme court sought to clarify the conceptual difference between trespass
to try title suits and DJA suits with this language, the distinction it promulgated has been
difficult to apply in practice because construing the terms of contracts and deeds frequently
implicates the ultimate issue of title. See Roberson v. City of Austin, 157 S.W.3d 130, 135
(Tex. App.-Austin 2005, pet. denied) (describing the post-Martin law as "contradictory and
confused"). 

 Pre-Martin authority suggests that an action seeking to construe the terms of a
contract or deed ought to be pleaded under the DJA even if the action's resolution is
effectively a decision on title. Brush v. Reata Oil & Gas Corp., 984 S.W.2d 720, 730 (Tex.
App.-Waco 1998, pet. denied). We must decide whether that principle still applies in the
wake of Martin. (5)

 In the present case, the validity of Cadle's mechanic's lien could not be ascertained
without first construing the validity of the assumption deed and the contracts signed by Ms.
Ortiz. Assessing the validity of these documents is explicitly a stated function of the DJA. 
Tex. Civ. Prac. & Rem. Code Ann. § 37.004. While it is true that the dispute over the
deed's validity ultimately implicates title, much of contract and deed construction implicates
title, and that does not indicate that all such cases are trespass to try title suits. Such an
interpretation would render the DJA meaningless. Rodriguez v. Tex. Workforce Comm'n,
986 S.W.2d 781, 783 (Tex. App.-Corpus Christi 1999, pet. denied) (holding that "courts
are to construe language used in statutes so as to harmonize all relevant laws, not create
conflict"). The central issue in this case was not a "cloud on title" as the trespass to try title
action is intended to address; the issue was instead the lien's validity, which could only be
resolved by declaration of the trial court. Analytically, then, the case is properly pleaded
and evaluated under the DJA. 

 This is the type of analysis that courts undertook before Martin, and we see no
indications that the Martin holding changed this. Martin does not hold that all property
disputes are trespass to try title suits; it merely clarifies the analytical framework that courts
must apply when deciding whether a suit is a trespass to try title. Martin, 133 S.W.3d at
267. The Ortizes properly pleaded their suit under the DJA and are now entitled to a
recovery of attorneys fees from Cadle. Tex. Civ. Prac. & Rem. Code Ann. § 37.009.

V. Conclusion

 The great weight and preponderance of the evidence in this case conclusively
establishes that the Ortizes did not waive their homestead interest by misrepresentation,
and thus the district court's decision to invalidate Cadle's lien because it was not consented
to in writing by both spouses must be upheld. Additionally, the Ortizes properly pleaded
their claims under the DJA, and established their right to attorneys' fees. The judgment
of the district court as to both the validity of the lien and the award of attorneys' fees is
AFFIRMED.

 ___________________________

 GINA M. BENAVIDES,

 Justice


Dissenting Opinion by

Justice Linda Reyna Yañez.


Opinion delivered and filed this 

the 17th day of May, 2007.
1. Although Mr. and Ms. Ortiz have been continuously married since 1989, tax returns filed in the
record indicate a slightly more erratic situation. In 1994, the couple filed jointly. In 1995, Ms. Ortiz filed as an
unmarried single. And in 2003, Ms. Ortiz filed as "head of household."
2. Mr. Bostick could not be located for trial and was unable to testify about these matters.
3. Cadle relied on the assumption deed, note, and trust deed. The only document on which Ms. Ortiz
appears to have affirmatively misrepresented herself as "single" was the HUD credit application. Cadle does
not argue that it is entitled to rely upon the credit application, so we need not address whether this is a
misrepresentation sufficient to vindicate Cadle's lien.
4. The Ortizes also allege that the home improvements began before the relevant documents had been
signed and processed--an allegation to which Cadle never responds. We do not reach this argument,
however, because we have already found the lien invalid for not meeting the two-spouse signature
requirement. Tex. R. App. P. 47.1. Moreover, the argument was inadequately briefed. Tex. R. App. P. 38.1(h),
38.2(a)(2).
5. We have cited Martin in the past, but this is the first time we address whether a wrongful foreclosure
"necessarily involves the question of title" and must therefore be classified as a trespass to try title action. See
Garza v. Gonzales, No. 13-05-200-CV, 2006 Tex. App. LEXIS 9978, at *19 (Tex. App.-Corpus Christi Nov.
16, 2006, no pet.) (mem. op.) (holding that boundary disputes cannot be resolved using the DJA); Americo
Energy Res., L.L.C. v. State, No. 13-05-460-CV, 2006 Tex. App. LEXIS 661, at *20 (Tex. App.-Corpus Christi
Jan. 26, 2006, no pet.) (mem. op.) (holding that the settlement/clarification of easement rights is not a
trespass to try title because it is specifically provided for by the DJA); Aguillera v. John G. & Marie Stella
Kenedy Mem'l Found., 162 S.W.3d 689, 698 (Tex. App.-Corpus Christi 2005, pet. denied) (holding that
competing claims to land ownership constitute a trespass to try title).