NO. 07-08-0020-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C 

 MARCH 10, 2009

______________________________

PEACHTREE CONSTRUCTION, LTD. AND PEACHTREE 

CONSTRUCTION, INC.,  APPELLANTS

V.

MARION NEAL HEAD, APPELLEE

_________________________________

FROM THE 17
TH
 DISTRICT COURT OF TARRANT COUNTY;

NO. 017-214779-05; HONORABLE FRED W. DAVIS, JUDGE

_______________________________

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

MEMORANDUM OPINION

Appellants, Peachtree Construction, Ltd. and Peachtree Construction, Inc. (collectively Peachtree), appeal from a judgment rendered in favor of Appellee, Marion Neal Head, following a jury trial of Head’s personal injury action wherein he was awarded damages of $191,970 with prejudgment interest.  By its first issue, Peachtree asserts the trial court erred by denying its motions for directed verdict and/or judgment notwithstanding the verdict on the issue of whether it was entitled to statutory immunity as a contractor for the Texas Department of Transportation pursuant to section 97.002 of the Texas Civil Practice and Remedies Code
.
(footnote: 1)  By its second issue, Peachtree asserts the evidence is both legally and factually insufficient to support a finding that it was not in compliance with the contract documents material to the condition that was the proximate cause of Head’s injuries.  We affirm.

Background

Peachtree was under contract with TxDOT to complete a full-depth pavement repair and asphalt overlay project on eastbound lanes of I-30 in Tarrant County.  The contract required that the existing asphalt be milled or stripped from the roadway, the underlying concrete repaired and sealed, and a one and a half to two inch asphalt overlay applied to the sealed concrete.  The contract also required that Peachtree provide safe passage of traffic on and/or across existing highways at all times during construction of the project.

    Early in the morning of October 30, 2003, Head left for work on his motorcycle.  He entered I-30 traveling eastbound and encountered a segment of I-30 being re-paved by Peachtree.  Because Peachtree had placed the asphalt overlay on some, but not all, of  the eastbound lanes, the surfaces of the respective lanes were uneven.  That is, the surface of the lane closest to the shoulder being unpaved was lower than the surface of the center lane which was paved.  Head was driving behind a slow-moving construction truck at less than the posted speed.  

When the center lane cleared of traffic, Head attempted to change lanes and pass the truck.  He leaned to the left on his motorcycle and accelerated in order to clear the raised asphalt on the finished lane.
(footnote: 2)  As he attempted to change lanes, he noticed there was a significant variance between the surface of his lane and the top of the asphalt in the center lane.  Immediately, he hit a high spot.  His next memory was waking up injured in a hospital. Head estimated the variance between the paved and unpaved lanes was six to eight inches.

At trial’s end, the jury was instructed that with respect to Peachtree, negligence meant “a failure to comply with the contractual requirements material to the condition or defect, if any, that was the proximate cause of Marion Head’s injuries.”  The jury returned a verdict finding Peachtree and Head were both negligent in proximately causing the accident.  The jury attributed ninety percent of the negligence to Peachtree and ten percent to Head.   After reducing Head’s damages by his percentage of negligence, the trial court entered judgment in favor of Head.  Thereafter, Peachtree filed this appeal.
(footnote: 3)
   
Discussion

Peachtree’s first issue contends the trial court erred by failing to grant a directed verdict on statutory immunity in its favor because Head failed to establish in his case-in-chief that Peachtree was not in compliance with its TxDOT contract due to the variance between the paved and unpaved lanes.  Peachtree’s second issue asserts the undisputed evidence established that it was in compliance with its TxDOT contract at the time of the accident and that Head’s evidence constituted legally and factually insufficient evidence of a failure to comply with the contract provisions as they pertained to the condition or defect that was the proximate cause of Head’s injuries.  For purposes of discussion, we will address Peachtree’s second issue first.

I. Standard of Review - Issue Two

Under the legal sufficiency standard, we must credit evidence that supports the judgment if reasonable jurors could, and we must disregard contrary evidence unless reasonable jurors could not.  
City of Keller, 
168 S.W.3d, 802, 
827 (Tex. 2005).  
See
 
Coastal Transp. Co., Inc. v. Crown Cent. Petroleum Corp., 
136 S.W.3d 227, 233-34 (Tex. 2004).  If the evidence falls within the zone of reasonable disagreement, we may not invade the fact-finding role of the jurors, who alone determine the credibility of the witnesses, the weight to give their testimony, and whether to accept or reject all or part of that testimony. 
 City of Keller, 
168 S.W.3d at 822.  Unless there is no favorable evidence to support the challenged finding or if contrary evidence renders supporting evidence incompetent or conclusively establishes the opposite of the finding, we must affirm.  
See
 
id.
 at 810-11.

In considering the factual sufficiency of the evidence, we must examine the whole record to determine whether the evidence supports the jury findings.  
Golden Eye Archery, Inc. v. Jackson, 
116 S.W.3d 757, 761-62 (Tex. 2003) (citing 
In re King’s Estate
, 150 Tex. 662, 244 S.W.2d 660, 661 (1951)).  The mere fact that we might have reached a different conclusion on the facts does not authorize us to substitute our judgment for that of the jury.  
Richmond Condominiums v. Skipworth Commercial Plumbing, Inc., 
245 S.W.3d 646, 658 (Tex.App.–Fort Worth 2008, no pet.); 
Salazar v. Hill
, 551 S.W.2d 518, 520 (Tex.Civ.App.–Corpus Christi 1977, writ ref’d n.r.e.).  
       

II. Statutory Immunity

Peachtree’s contention that Head’s evidence was legally and factually insufficient to prove it was not in compliance with its TxDOT contract misconstrues the applicable burden of proof.  Under section 97.022, 
a contractor constructing or repairing a highway for TxDOT is entitled to statutory immunity for any liability arising from its performance of the TxDOT contract if the contractor is (1) in compliance with TxDOT’s contractual provisions (2) material to a condition or defect (3) that proximately causes a personal injury.  

The 
party asserting an affirmative defense bears the burden of pleading and proving its elements. 
Quantum Chemical Corp. v. Toennies, 
47 S.W.3d 473, 481 (Tex. 2001); 
Compass Bank v. MFP Financial Services, Inc.
, 152 S.W.3d 844, 851 (Tex.App.–Dallas 2005, pet. denied)
.  
An affirmative defense is a denial of the plaintiff’s right to judgment even if the plaintiff establishes every allegation in the pleadings.  
Walzier v. Newton
, 27 S.W.3d 561, 563 (Tex.App.–Amarillo 2000, no pet.); 
Highway Contractors, Inc. v. West Texas Equipment Co., Inc.
, 617 S.W.2d 791, 794 (Tex.Civ.App.–Amarillo 1981, no writ).  An affirmative defense does not rebut or deny the factual propositions of the plaintiff’s pleading,  
Walzier v. Newton
, 27 S.W.3d at 563, but avoids the plaintiff’s claim altogether.  
Gorman v. Life Ins. Co. of North America
, 811 S.W.2d 542, 546 (Tex. 1991); 
Pulley v. Milberger
, 198 S.W.3d 418, 425 (Tex.App.–Dallas 2006, pet. denied).

“Whether a particular fact is a matter of avoidance or defense turns on the burden of proof.”  
Trevino v. Allstate Ins. Co.
, 651 S.W.2d 8, 13 (Tex.App.–Dallas 1983, writ ref’d n.r.e.).  The burden of proving a statutory exception rests on the party seeking the benefit from the exception.  
City of Houston v. Jones
, 679 S.W.2d 557, 559 (Tex.App.–Houston [14
th
 Dist.] 1995, no writ).  Moreover, a recognized principle in determining the burden of proof is to place it on the party having the peculiar knowledge of the facts to be proved, 
Dessommes v. Dessommes, 
505 S.W.2d 673, 679 (Tex.Civ.App.–Dallas 1974, writ ref’d n.r.e.), and, as a general rule, it makes more sense to require a defending party to prove an affirmative act than to require a plaintiff to prove the negative.  See 
Cook Composites, Inc., 
15 S.W.3d at 137-38; 
City of Houston v. Crabb
, 905 S.W.2d 669, 674 (Tex.App.–Houston [14
th
 Dist.] 1995, no writ). 
 

 
 To establish a 
prima facie 
case of negligence, Head was required to plead and prove that (1) Peachtree failed to exercise ordinary care while re-paving eastbound I-30 (2) and created a defect in the roadway (3) that was the proximate cause (4) of Head’s injuries.
(footnote: 4)  In his case-in-chief, Head testified that an extraordinary variation between the paved and unpaved lanes on eastbound I-30 created an unreasonably dangerous condition that caused his motorcycle accident and resultant injuries.  As such, he established his 
prima facie 
case.

  
       
Peachtree, on the other hand, sought to establish immunity from liability under section 97.002, 
i.e., 
a statutory exception or independent reason why Head should not prevail.  
Peachtree also 
had greater access to the facts necessary to establish the statutory exception and was proving an affirmative act.  As a result, we find that Peachtree bore the burden of proving its affirmative defense of statutory immunity
(footnote: 5) under section 97.002.

III. Peachtree’s Contract

Peachtree next asserts that Head failed to establish its contract contained a requirement that the variance between paved and unpaved lanes not exceed two inches.  We disagree.

Peachtree’s contract specification for the asphalt overlay on eastbound I-30 lanes was a thickness of two inches.  James Weaver, TxDOT Highway Inspector, testified that the requirement for this project was that there be a maximum overlay of two inches or less in some places and part of his responsibilities as inspector was to make sure that the overlay did not exceed two inches.  Stacy Clack, TxDOT Construction Inspector, corroborated Weaver’s testimony and testified that “[t]hey had special instructions to make sure there wasn’t anything over two inches.”  

A paving contract specifying the thickness of layered materials requires that a uniform material base be applied in compliance with the contract’s specifications.  
See Griffin v. Holiday Inns of America, 
452 S.W.2d 517, 523 (Tex.Civ.App.–Austin 1970, no writ) (.63 inch average deviation from paving contract specification requiring 6 inch base not in compliance).  Accordingly, there was probative evidence establishing that Peachtree’s contract required that its asphalt overlay on the eastbound I-30 lanes not exceed two inches.

   
IV. Contractual Compliance

To be in compliance with its contract, Peachtree was required to apply an asphalt overlay on the eastbound I-30 lanes that did not exceed two inches.
(footnote: 6)  Raymond Taylor, Peachtree’s Asphalt Superintendent, testified that, if there was a variance in the asphalt that exceeded six inches, such “[a] big bump would be [a] dangerous, inherently dangerous condition.”  

Head unequivocally testified that, when he attempted to change lanes on his motorcycle, he encountered a six to eight inch variance between the paved and unpaved lane surfaces.
(footnote: 7) The police accident investigation report indicated that Head lost control of his motorcycle due to the difference in lane thickness without attributing any fault to Head.  On the other hand, Taylor, who was off-site at the time of the accident, testified that, based upon daily work reports, project plans, and work procedures, he believed Peachtree was in compliance with its TxDOT contract at the time of the accident.  Without specific knowledge of the variance at the accident site, Weaver and Clack also testified that they believed Peachtree was in compliance with the two inch requirement at the site of the accident based primarily on inspection procedures.
(footnote: 8) 

It is within the province of the jury to judge the credibility of the witnesses and the weight given their testimony and to resolve conflicts and inconsistencies in the testimony of any one witness as well as the testimony of different witnesses.  
UMC, Inc. v. Coonrod Elec. Co., Inc., 
667 S.W.2d 549, 556 (Tex.App.–Corpus Christi 1983, writ ref’d n.r.e.)
; Scott v. Gibson Oil Co.
, 471 S.W.2d 924, 926 (Tex.Civ.App.–Tyler 1971, no writ).  In addition, the jury had the right to believe one witness, and disbelieve another, or to believe part of the testimony of the witness and disbelieve any other part.  
Schwab v. Stewart
, 387 S.W.2d 939, 943 (Tex.Civ.App.–Amarillo 1964, writ ref’d n.r.e.).
  

At the very least, the conflicting testimony established a fact issue for the jury to decide.  
See Bennett Truck Transport, LLC v. Williams Brothers Construction
, 256 S.W.3d 730, 732-33 (Tex.App.–Houston [14
th
] Dist. 2008, no pet. h.).
  
That is, whether the variance between the paved and unpaved lane surfaces exceeded the two inch requirement by as much as six inches at the location where the accident occurred.  
Such issues are the exclusive province of the jury.  
Richmond Condominiums, 
245 S.W.3d at 658 (citing 
Bellefonte Underwriters Ins. Co. v. Brown, 
704 S.W.2d 742, 744-45 (Tex. 1986)). 

Having reviewed the entire record and considered all the evidence, we find that the evidence falls within the zone of reasonable disagreement and there is sufficient evidence of probative force to support the jury’s findings.  Accordingly, the jury’s verdict is not so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust.  Issue two is overruled.

V. Standard of Review - Issue No. One

An appeal from the denial of a motion for directed verdict or judgment notwithstanding the verdict (JNOV) is in essence a challenge to the legal sufficiency of the evidence.  
City of Keller v. Wilson
, 168 S.W.3d 802, 823 (Tex. 2005).  A court may disregard a jury’s verdict and render judgment JNOV if no evidence supports one or more of the jury’s findings, or if a directed verdict would have been proper, 
Tiller v. McClure
, 121 S.W.3d 709, 713 (Tex. 2003) (citing 
Brown v. Bank of Galveston, Nat’l Ass’n
, 963 S.W.2d 511, 513 (Tex. 1998)). 

By finding Peachtree negligent, the jury implicitly found that Peachtree had failed to carry its burden of establishing immunity from liability under section 97.002.  As more fully set forth hereinabove, that finding is supported by the evidence and the trial court properly denied Peachtree’s motion for directed verdict at the conclusion of Head’s case-in-chief.  Issue one is overruled.

CONCLUSION

The trial court’s judgment is affirmed.

Patrick A. Pirtle

      Justice

      

FOOTNOTES
1:
Section 97.002 states, in pertinent part, as follows:

A contractor who constructs or repairs a highway . . . for the Texas Department of Transportation is not liable to a claimant for personal injury  . . . arising from the performance of the construction or repair if, at the time of the personal injury . . . the contractor is in compliance with contract documents material to the condition or defect that was the proximate cause of the personal injury. . . .

Tex. Civ. Prac. & Rem. Code Ann. § 97.002 (Vernon 2005) (hereinafter referred to as “section 97.002").

2:
Head had undertaken this maneuver many times in the past.  At trial, Head testified he was a motorcycle enthusiast with more than thirty years experience driving motorcycles cross-country as well as in cities.  He testified that, during that time, he had made uneven lane changes under similar conditions thousands of times.  

3:
Peachtree filed a brief in support of its appeal, however, Head did not favor us with a brief in response.  Although the Texas Rules of Appellate Procedure offer no guidance under the circumstances, several intermediate appellate courts have held that whenever an appellee fails to file a brief, the appellate court should conduct an independent analysis of the merits of the appellant’s claim of error, limited to the arguments raised by the appellant, to determine if there was error.  
See In re Bowman
, No. 03-07-0418-CR, 2007 WL 4269842, at *2 (Tex.App.–Austin Dec. 5, 2007, no pet.) (not designated for publication). 
See also Burns v. Rochon
, 190 S.W.3d 263, 267 n.1 (Tex.App.–Houston [1
st
 Dist.] 2006, no pet.).  While we believe the better course is for appellees to file response briefs, we will undertake to conduct an independent analysis of the merits of Peachtree’s claims of error.   

4:
Whether Peachtree was under a duty to exercise ordinary care to keep the roadway free of defects while re-paving eastbound I-30 was not raised on appeal.

5:
The statutory immunity available to contractors under section 97.002 derives from their status as TxDOT contractors.  That sovereign immunity, 
Tex. Dep’t of Parks & Wildlife v. Miranda
, 133 S.W.3d 217, 224 (Tex. 2004), and official immunity, 
Telthorster v. Tennell
, 92 S.W.3d 457, 460-61 (Tex. 2002); 
Kassen v. Hatley
, 887 S.W.2d 4, 8 (Tex. 1994), are considered affirmative defenses further supports our finding.

6:
Peachtree asserts that the applicable contract provision is Sheet 31 which addresses appropriate signage when a variance between paved and unpaved lanes exceeded one inch. 
However, the record is clear that Head’s negligence claim was not based on inadequate signage but the variance itself.  Thus, the material contract provision related to Head’s claim is Sheet 13 of the Sheet Quantities section of Peachtree’s contract stating 
that the specification for the asphalt overlay on eastbound I-30 lanes was two inches.  

7:
Peachtree asserts that Head’s estimation of the size of the variance was a “guess.”  However, Head testified under questioning by Peachtree’s counsel that he could only “guess” at the reason for the variance and testified without qualification that the variance was six to eight inches.  

8:
Testimony by Weaver and Clack on this issue was tentative – interspersed with qualifying phrases such as “to the best of my knowledge,” “it was my belief at the time,” and “the best I can recall.”