**TARLETON STATE UNIVERSITY, Appellant,**

v.

**K.A. SPARKS CONTRACTOR, INC., Appellee.**

No. 10–85–015–CV.

Court of Appeals of Texas, Waco.

Aug. 8, 1985.

Rehearing Denied Sept. 5, 1985.

Jim Mattox, Atty. Gen., David R. Richards, Executive Asst. Atty. Gen., J. Patrick

Wiseman, Chief Asst. Atty. Gen., Elizabeth R. Todd, Kevin T. O'Hanlon, Asst. Attys. Gen., Austin, for appellant.

Jana Ward, Swift, Brockermeyer, Bell & Ward, Fort Worth, for appellee.

## OPINION

JAMES, Justice.

This appeal arises out of a contractual dispute between Appellant and Appellee over water damage to the gymnasium floor of the Physical Education Building at Tarleton State University. Plaintiff-Appellant Tarleton State University sued Defendant-Appellee K.A. Sparks Contractor, Inc. in contract and tort to recover the cost of repairing the damaged gymnasium floor plus pre-judgment interest and attorney's fees. The contractor defended by general denial, and on the theories of comparative negligence, acts of God and unavoidable accident.

On or about April 5, 1976, the Board of Directors of the Texas A & M University System, acting on behalf of Tarleton State University, entered into a contract with K.A. Sparks Contractor, Inc. for the construction of Home Economics and Physical Education facilities at Tarleton State University. This work entailed an addition to the existing gymnasium facility on two of the four sides of the building. During the course of construction, specifically twice on May 25, 1976, and again on August 28, 1976, and on August 30, 1976, the wooden floor in the existing gymnasium was flooded from rain water. After the August 30, 1976, flooding, the wooden gymnasium floor started swelling and buckling from the accumulation of water to the point where the floor was beyond repair and required replacement.

After the flooding the parties entered into negotiations for the repair of the gym floor, as a result of which Change Order No. 1 to the original contract was negotiated. A Memorandum of Agreement was signed by the parties which specifically provided that neither party would waive its rights or remedies to recover under the original contract, and wherein the contractor agreed to repair the gym floor for $46,259.52, for which the contractor was paid.

Plaintiff-Appellant Tarleton brought this suit against Defendant-Appellee contractor to recover the cost of the repair in the amount of $46,259.52, for interest and attorney's fees.

The case was tried to a jury which found in answer to Special Issues as follows:

*No. 1:* that Sparks Contractor breached its contract by failing to protect the gymnasium from damage in the event of rain.

*No. 2:* which was a proximate cause of Plaintiff Tarleton's damages.

*No. 3:* that Sparks Contractor breached its contract by failing to properly supervise the construction work to protect the gymnasium from rains.

*No. 4:* which was a proximate cause of Plaintiff Tarleton's damages.

*No. 5:* $23,129.76 would fairly and adequately compensate Tarleton for damages as a result of breach of contract by Sparks Contractor.

*No. 6:* to compensate Tarleton for legal services rendered on its behalf by the Texas Attorney General's office, the jury found zero dollars for trial of the case, zero dollars for appeal to the Court of Appeals, and zero dollars for writ of error to the Supreme Court of Texas.

*No. 7A:* that Sparks Contractor failed to adequately protect in advance the existing facility against rain, which failure was negligence and a proximate cause of the damages in question.

*No. 7B:* that Sparks Contractor failed to adequately and properly supervise the construction work being performed, which failure was negligence, and a proximate cause of the damages in question.

*No. 7C:* that Sparks Contractor failed to hire and appoint competent personnel to oversee its construction work, which failure was negligence and a proximate cause of the damages in question.

*No. 8:* $23,129.76 would reasonably compensate Tarleton for the actual damages it has suffered.

*No. 9:* Tarleton failed to adequately and timely inspect the gymnasium as a person of ordinary care would have done so as to prevent damage to the building in the event of rains.

*No. 10:* which was a proximate cause of Plaintiff Tarleton's damages in question.

*No. 11:* Tarleton failed to adequately maintain the condition of the gymnasium as a person of ordinary care would have done to prevent damage to the building in the event of rains.

*No. 12:* which was a proximate cause of Plaintiff Tarleton's damages in question.

*No. 13:* Tarleton, acting through its agents, servants, and employees, failed to warn Sparks Contractor that the condition and placement of the pipes in the gymnasium would allow water to enter onto the gymnasium floor in the event of rains.

*No. 14:* which failure was a proximate cause of Plaintiff Tarleton's damages in question.

*No. 15:* 50% of the negligence that caused the damage to the gym floor was attributed to Plaintiff Tarleton, and 50% of the negligence was attributed to Defendant Sparks.

After verdict, both Plaintiff and Defendant filed motions to disregard the jury's answers to special issues and motions for judgment notwithstanding the verdict, all of which were denied by the trial court.

Judgment was entered in favor of Plaintiff Tarleton State University against Defendant K.A. Sparks Contractor, Inc. in the amount of $23,129.76 plus $11,102.28 prejudgment interest, or a total amount of $34,232.04 plus costs, from which Plaintiff Tarleton appeals on eight points of error. Appellee Sparks files six cross-points of error. We overrule all of Appellant's points of error and all of Appellee's cross-points and affirm the trial court's judgment.

Appellant's points one, two, and three assert the trial court erred in submitting Special Issue No. 5 because (Appellant says) the amount of breach of contract damages was established as a matter of law at $46,259.52; Appellant further asserts that there is no evidence to support the jury's answer of $23,129.76. We do not agree.

We will treat these points as asserting the evidence conclusively establishes that the damages are $46,259.52, as opposed to a "no evidence" point, since Plaintiff-Appellant had the burden of proof. See *O'Neil v. Mack Trucks, Inc.,* (Tex.1976) 542 S.W.2d 112.

The damages sustained by Plaintiff as a result of water damage to the gymnasium floor were not established as a matter of law. There was conflicting evidence as to the cause of the damage thereby creating a fact issue for the jury, which found the damage at $23,129.76 or one-half of the cost of replacing the gym floor. As the Plaintiff-Appellant is entitled only to those damages caused by Defendant-Appellee's breach, it is proper for the jury to determine under the evidence for what, if any, portion of Plaintiff-Appellant's damages the Defendant-Appellee is responsible.

Both sides presented considerable testimony from eyewitnesses and experts, and in most instances the eyewitness testimony was also expert testimony. The evidence may be fairly summarized by stating that there were two schools of thought or theories concerning the cause of the water damage to the gym floor, one of which if totally true would impose full liability on the contractor, and the other of which if true would exonerate the contractor.

The theory which favored Plaintiff-Appellant Tarleton was supported by testimony along this line: the contractor made excavations in order to install grade beams to support the new structure, and in doing so piled earth a short distance from the existing gymnasium building. Moreover, the contractor tore the porch off the gym building, and removed the downspouts from the gym roof. Then, when the rains came, the water from the gym roof coupled

with other rain water trapped between the excavations and the gym building came through the doors into and flooded the gym floor. It is significant that the gym floor is eight to nine feet below the outside ground level.

The other theory of the cause of damage was supported by testimony to this effect: the ventilating system for the heating and air conditioning of the gym was arranged such that the return air was brought from near the floor level from four points, one near each corner of the gym, and each of the ducts that was used for the return air consisted of thirty-six inch diameter concrete pipe. Each return air duct was twelve to fifteen inches above the floor, which was the bottom of each pipe. Each pipe then slanted upwards toward its nearest corner of the building, and then each pipe went up vertically to the attic of the gym. Each return air duct was composed of two joints of concrete pipe, and the joint area of each pipe was below the ground's surface. The pipes were originally joined together with a rubber-like gasket which was supposed to seal the joints together. However, these joints had come apart at some time after the gym building had been constructed and prior to the time Defendant-Appellee contractor went to work. One expert testified that in his opinion these joints came apart because the soil had not been properly compacted around the pipe during the original construction of the gym. At any rate, there is plenty of evidence to the effect that the gym floor was flooded by water entering these return air ducts through these open joints of pipe. There is also evidence that Plaintiff-Appellant Tarleton's people knew of these open joints in the return air ducts prior to the time of the contract with Defendant-Appellee Sparks, and that no one connected with Tarleton ever told Sparks or his people about them. Of course, these return air ducts in the existing gym building were no part of the contract between Plaintiff-Appellant Tarleton and Defendant-Appellee Sparks, and Sparks had no control over water entering the gym through these ducts.

From the record as a whole, the jury was entitled to ascertain what portion of the water damage was attributable to the contractor's breach, and to fix the damage amount in answer to Special Issue No. 5 as they did. The jury's answer of $23,-129.76 was well within the range of testimony. Appellant's points one, two, and three are overruled.

Appellant's points of error four, five, six, seven, and eight contend the trial court erred in submitting Special Issue No. 6 on the ground that reasonable attorney's fees were established as a matter of law at $12,000.00, and there is no evidence to support the jury's answer of zero. We overrule these points of error.

Plaintiff-Appellant Tarleton was represented by the office of the Attorney General of Texas. An assistant Attorney General testified that when he was in private practice in Travis County that he charged $100.00 per hour for his services and that such an hourly rate would be a reasonable fee in this case; that the records of the Attorney General's office showed that 210 hours had been accumulated in connection with this case; that the attorney-witness thought this 210 hours was "probably a little bit high by virtue of the fact that the file was turned over several times" from one assistant Attorney General to another; that his own estimate would be 120 hours necessary for the investigation, preparation and trial of this case; that "I would think that *somewhere in the neighborhood of $12,000.00* would be a reasonable fee." (emphasis supplied). The attorney-witness further testified that a reasonable fee might be ⅓ of the total amount recovered.

On cross-examination this same assistant Attorney General testified that there had been no depositions taken prior to trial, that a day to a day and a half had been spent in preparing the pleadings (same being 8 to 12 hours), plus two days in trial (same being 16 to 20 hours). The attorney-witness was then asked how he accounted for the balance of the 120 hours charged, to which he replied that these hours were

consumed examining the plans and specifications of the contract.

This attorney-witness was the only witness who testified concerning the attorney's fees. Appellant argues that since this was the only witness who testified concerning attorney's fees, and Appellee offered no rebuttal testimony, and since he was a government attorney (as opposed to a private attorney), that Appellant's witness was a "disinterested witness", and that $12,000.00 attorney's fees was conclusively established as a matter of law. We do not agree.

 The general rule is that it is the province of the jury to determine what is the reasonable value of an attorney's services. *Gulf Paving Co. v. Lofstedt*, (1945) 144 Tex. 17, 188 S.W.2d 155 at page 160. A fact issue is raised when, as here, there are circumstances in evidence tending to discredit or impeach the testimony of the interested witness. See *Anchor Casualty Co. v. Bowers*, (Tex.1965) 393 S.W.2d 168.

The assistant Attorney General who testified is, in our opinion, an interested witness. Any attorney assessing his or her own work and for whose client's benefit the award is being sought is an interested witness whose credibility cannot be forced on a jury. Although the benefit in the case at bar may be indirect, the award benefits the attorney's employer and/or client, and in any event the testimony concerns the value of the witness's own services.

Moreover, the jury was entitled to believe from the evidence that the number of hours charged were duplicitous and excessive. Appellant's points of error four, five, six, seven, and eight are overruled.

Appellee asserts six cross-points of error to the effect that the trial court erred in submitting Special Issues Numbers 5 and 8, the damage issues, on the grounds that there is no evidence to support the reasonableness of the cost of repairs, and that the evidence is legally insufficient to support the submission of these issues.

We have already discussed the abundance of evidence to support the submission of these two damage issues. With reference to Appellee's contention that there is no evidence concerning the reasonableness of the cost of repair, suffice it to say that Appellee contractor is in no position to complain, because he actually contracted for and charged the amount of $46,-259.52 to make the repairs to the gym floor. How can Appellee now assert that this is unreasonable? See *Smith v. Kinslow*, (Dallas CA 1980) 598 S.W.2d 910, no writ, and the cases cited at page 914. All of Appellee's cross-points are overruled.

Judgment of the trial court is affirmed.

AFFIRMED.