Vincent A. BROWN, Appellant,

v.

BANK OF GALVESTON, NATIONAL
ASSOCIATION, Appellee.

No. 14–94–00596–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

July 18, 1996.

Rehearing Overruled Oct. 3, 1996.

Kenneth C. Kaye, League City, for appellant.

G. William Rider, Galveston, Craig L. Stahl, Houston, for appellee.

Before YATES, FOWLER and O'NEILL, JJ.

## OPINION

YATES, Justice.

Vincent A. Brown (Brown) appeals from a judgment notwithstanding the verdict (JNOV) in favor of the Bank of Galveston, National Association (the Bank). In five points of error, Brown alleges the trial court erred by (1) denying his motion for judgment on the verdict; (2) granting the Bank's motion for JNOV; (3) upholding the validity of the Bank's foreclosure sale; and (4) finding the Bank not liable under the Texas Deceptive Trade Practices Act (DTPA). By two cross-points, the Bank alleges the trial court erred by (1) refusing to enter judgment on its deficiency counterclaim and attorney's fees; and (2) refusing to submit its requested jury issues regarding estoppel. We affirm the judgment of the trial court granting JNOV and modify the judgment to award the deficiency and attorney's fees in favor of the Bank.

In 1984 Brown purchased a lot in Galveston, Texas for $17,500.00. To finance the purchase, Brown borrowed $15,000 from a credit union. To secure payment of the promissory note, Brown executed a deed of trust, and a deed with a vendor's lien assigned to the credit union. Brown then contracted with Marcelino Compean (Compean) to construct a house on the property, and secured permanent financing through Fort Worth Mortgage Company.

On November 18, 1985, Brown signed a promissory note payable to Compean in the amount of $64,577.27 (the Brown Note). A portion of the original principal of the Brown Note included the balance due to the credit union, which Compean paid in consideration for an assignment of the credit union's liens. To secure payment of the Brown Note, Brown executed a Mechanic's Lien Contract in favor of Compean. Under the terms of the Mechanic's Lien Contract, the liens securing payment of the credit union note were renewed, and extended as additional security for the Brown Note. On the same day, Compean executed a collateral assignment of his interest in the Brown Note and the Mechanic's Lien Contract to the Bank as security for providing interim financing of the Brown house.

Subsequently, during construction, disputes arose between Compean and Brown as to whether Compean was following the specifications of their agreement in constructing the house. Unable to resolve their disputes, Compean walked off the job in 1986 when the house was eighty-percent complete. Because of these disputes, Brown's permanent financing was not funded, and Compean was unable to repay his note to the Bank.

On October 21, 1986, the Bank foreclosed on the interim financing note. At the foreclosure sale, the Bank purchased the Brown Note and succeeded to the Mechanic's Lien Contract and the credit union liens. After the foreclosure sale, Compean reached an agreement with Brown, whereby Brown agreed to pay for additional items and options to be added to the house, and Compean returned to complete the job. Compean completed the house in April, 1987, and Brown and his family moved into the house in May, 1987. Nevertheless, Brown and Compean continued to argue over who would pay several subcontractor bills. As a result of their inability to settle this issue, the permanent financing was never closed. Ultimately, the Bank foreclosed on the Brown Note and liens, and purchased the property for $ 65,000.00 at a foreclosure sale on December 1, 1987.

Brown brought suit in 1988 against the Bank, alleging the Bank (1) made a wrongful demand resulting in loss of permanent financing; (2) foreclosed on an invalid lien; and (3) violated the Texas Deceptive Trade Practices Act (DTPA). The Bank asserted a counterclaim against Brown for the deficiency due under the Brown Note, as well as the Bank's related attorney's fees. The Bank then initiated forcible entry and detainer proceedings in the justice court. The justice court deferred any decision pending final outcome of Brown's suit against the Bank.

At trial, Brown submitted only the DTPA issues to the jury. The Bank did not submit a jury issue as to the amount of the deficiency due under the Brown Note, but did submit

a question for the reasonable amount of its attorney's fees. The jury found that the Bank knowingly made misrepresentations, breached expressed and implied warranties, and acted unconscionably, and that these acts were the producing cause of Brown's damages. They awarded Brown actual and additional damages, plus attorney's fees. The jury refused to award attorney's fees to the Bank.

The Bank moved for a JNOV, alleging (1) there was no evidence to support the jury's findings; (2) Brown was not a consumer in any transaction with the Bank; and (3) Brown was not a consumer in any transaction with Compean in which the Bank was inextricably intertwined. The Bank also requested the court disregard the jury's findings as to its attorney's fees and enter judgment on its counterclaim for the deficiency and attorney's fees as a matter of law.

The trial court granted a JNOV, holding there was no evidence to support the jury's findings and no inextricable intertwining of the Bank in the transaction between Compean and Brown. The trial court did not enter judgment on the Bank's deficiency counterclaim and refused to disregard the jury's finding as to the Bank's attorney's fees.

■ Brown contends in his first two points of error that the trial court erred in overruling his motion for judgment and in granting the Bank's motion for JNOV. In points of error four and five, Brown alleges the trial court erred in failing to hold the Bank liable based upon its findings that the Bank was not inextricably intertwined with Compean and that there was no privity between the Bank and Brown. A trial court may render a judgment notwithstanding the verdict if there is no evidence to support one or more of the necessary jury findings. TEX.R. CIV. P. 301; *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 227 (Tex.1990); *Edgington v. Maddison,* 870 S.W.2d 187, 189 (Tex. App.—Houston [14th Dist.] 1994, no writ). When considering a "no evidence" point, the appellate court must consider only that evidence and reasonable inferences that tend to support the jury findings. *King v. Bauer,* 688 S.W.2d 845, 846 (Tex.1985); *Edgington,* 870 S.W.2d at 189. If the court finds more

than a scintilla of competent evidence to support the jury's findings, the court must uphold the findings. *Edgington,* 870 S.W.2d at 189.

■ To have standing to sue under the DTPA, a party must establish that he is a consumer, as defined by the DTPA. *Precision Sheet Metal Mfg. Co. v. Yates,* 794 S.W.2d 545, 551 (Tex.App.—Dallas 1990, writ denied). A party is a consumer under the DTPA if he meets two requirements. *Central Texas Hardware, Inc. v. First City, Texas–Bryan, N. A.,* 810 S.W.2d 234, 236–37 (Tex.App.—Houston [14th Dist.] 1991, writ denied). First, the party must seek or acquire goods or services by purchase or by lease. TEX. BUS. & COM.CODE ANN. § 17.45(4) (Vernon 1987). Second, the goods or services sought or acquired must form the basis of the party's complaint. *Melody Home Mfg. Co. v. Barnes,* 741 S.W.2d 349, 351–52 (Tex. 1987). "If either requirement is lacking, the person aggrieved by a deceptive act or practice must look to the common law or some other statutory provision for redress." *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 539 (Tex.1981).

■ A party may be a consumer as to one defendant, but not a consumer as to another defendant, depending on the defendants' relationship with each other. *Qantel Business Sys. v. Custom Controls,* 761 S.W.2d 302, 305 (Tex.1988). A person who seeks only to borrow money is not a consumer under the DTPA because money is not a good or a service. *Riverside Nat. Bank v. Lewis,* 603 S.W.2d 169, 174–75 (Tex.1980). However, where the extension of credit is incident to the sale of goods or services and the conduct of the party extending the credit is intertwined in the transaction, the borrower may be a consumer with respect to the creditor, as well as to the seller, of the goods. *Qantel,* 761 S.W.2d at 305; *Security Bank v. Dalton,* 803 S.W.2d 443, 452 (Tex.App.—Fort Worth 1991, writ denied) (citing *Knight v. Intern. Harvester Credit Corp.,* 627 S.W.2d 382, 388 (Tex.1982)). A creditor may be inextricably intertwined in the transaction so as to confer consumer status on a party if the extension of credit forms the means of mak-

ing the sale or purchase from the buyer's perspective. *Flenniken v. Longview Bank and Trust Co.,* 661 S.W.2d 705, 707 (Tex. 1983); *Knight,* 627 S.W.2d at 389. Therefore, to hold a creditor liable in a consumer credit transaction, the creditor must be shown to have some connection either with the actual sales transaction or with a deceptive act related to financing the transaction. *Home Sav. Ass'n v. Guerra,* 733 S.W.2d 134, 136 (Tex.1987) (citing *Flenniken,* 661 S.W.2d at 707; *Knight,* 627 S.W.2d at 388).

Brown does not challenge the trial court's finding that Compean and the Bank were not inextricably intertwined. Moreover, there were no pleadings or jury findings to support a holding that Compean and the Bank were inextricably intertwined. Brown never advanced this theory of recovery, and the trial court expressly found no inextricable intertwining. *See Home Savings,* 733 S.W.2d at 137.

Brown contends it is the Bank's own deceptive acts that form the basis of his DTPA claims. Brown asserts his consumer status on allegedly wrongful acts that occurred after the Bank foreclosed on the Compean lien and purchased Brown's note and liens. At that point, Brown asserts, "the Bank stepped into Compean's shoes and became, for all purposes, the contractor," and as the contractor, the Bank wrongfully foreclosed on his property. In support of this claim, Brown cites *Home Savings* and *Flenniken* for the proposition that a lender who is not inextricably intertwined is not liable to the consumer except for its own wrongful acts. Brown, however, misstates the law. "To hold a creditor liable in a consumer credit transaction, the creditor must be shown to have some connection either with the actual sales transaction or with a *deceptive act related to financing the transaction.*" *Home Savings,* 733 S.W.2d at 136. Brown does not complain that the Bank's deceptive act related to financing the purchase of his house, but rather, he complains the Bank wrongfully foreclosed on his property.

A creditor-assignee may be liable under the DTPA for the unconscionable act of causing the sale of property as in *Flenniken,* if the party is a consumer. The homeowners in *Flenniken* were consumers as to the bank because the bank and the builder were inextricably intertwined in the sales transaction, and "[t]he Bank's unconscionable act in causing the sale of the Flennikens' property and the partially built house arose out of the Flennikens' transaction with [the builder]." *Flenniken,* 661 S.W.2d at 707.[1]

Brown, however, does not base his consumer status on the relationship of the Bank and the builder to the sales transaction, but a wrongful act unrelated to the financing of the transaction. In this case, Brown was not a "consumer," and thus, lacked standing to bring a cause of action under the DTPA. Appellant's first, second, fourth and fifth points of error are overruled.

In point of error three, Brown complains that the trial court erred in upholding the validity of the foreclosure sale because (1) the house was incomplete when the foreclosure sale was held; and (2) the mechanic's and materialmen's lien, upon which the foreclosure sale was partially based, was invalid. However, because Brown did not submit his claim of wrongful foreclosure under a common law cause of action, or some other statutory provision, we do not reach the merits of his third point of error. Appellant's third point of error is overruled.

By cross-point, the Bank contends the trial court erred in refusing to enter judgment on the Bank's deficiency counterclaim, and for reasonable attorney's fees. Because the Bank failed to submit a question to the jury on the deficiency counterclaim, it waives this ground of recovery on appeal unless the

---

1. Brown claims *Flenniken* did not involve "inextricable intertwining". We disagree. Although the term "inextricably intertwined" was never expressly mentioned in the opinion, the court relied on its earlier opinion in *Knight,* which held that a buyer was a consumer as to the company financing the .transaction, because it and the seller "were so inextricably intertwined in the transaction as to be equally responsible for the conduct of the sale." *Id.* Moreover, Brown's assertion that there was no finding of intertwinement is erroneous because the court held that the creditor's unconscionable act *arose out of* the transaction between the buyer and the builder. *Id.*

claim is conclusively established under the evidence. TEX.R. Civ. P. 279; *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222–23 (Tex.1992). Only disputed issues must be submitted to the jury. *Employers Cas. Co. v. Block*, 744 S.W.2d 940, 944 (Tex. 1988).

At trial, the promissory note executed by Brown was introduced into evidence without objection. Further, the Bank presented several documents, letters, and testimony which support a deficiency of $11,778.38. Although Brown introduced evidence of the cost of completing his house in challenging the validity of the foreclosure under the partial completion clause of the Mechanic's Contract Lien, he did not controvert the amount of the deficiency under the Brown Note. Regardless of the amount of the Note secured by the Mechanic's Lien under the partial completion clause, Brown was still personally liable for the amount owed on the Note. *Ogden v. Dickinson State Bank*, 662 S.W.2d 330, 333 (Tex.1983). Thus, the trial court erred in refusing to enter a judgment on the Bank's deficiency counterclaim.

The Bank also alleges the trial court erred in not entering judgment in favor of the Bank for its attorney's fees. The promissory note executed by Brown provided for the payment of expenses, including reasonable attorney's fees in the event of legal action or proceedings for collection. The Bank's attorney testified at trial that the Bank was not seeking to recover attorney's fees for trial, but in the event of an appeal, their attorney's fees were as follows: $10,000 to the court of appeals; $3,500 for an application for writ of error to the Supreme Court; and $7,000 if the Supreme Court grants the application for writ of error and hears oral argument on the case. The issue of appellate attorney's fees was submitted to the jury and the jury returned a verdict of zero. The Bank requested the trial court to disregard the jury's findings.

A trial court may disregard a jury's negative finding and substitute its own affirmative finding only if the evidence conclusively establishes such an affirmative finding as a matter of law. *Harris County v. McFerren*, 788 S.W.2d 76, 78 (Tex.App.—

Houston [1st Dist.] 1990, writ denied); TEX.R. Civ. P. 301. A challenge on appeal that the trial court failed to disregard a jury's finding must be construed as a legal sufficiency challenge. *Hardy v. C.P.I. Sales, Inc.*, 511 S.W.2d 89, 94 (Tex.Civ.App.—Houston [1st Dist.] 1974, no writ). Thus, looking only at the evidence that favors the jury's findings and ignoring all evidence to the contrary, the question before us is whether there is more than a scintilla of competent evidence to support the jury finding that the Bank's reasonable attorney's fees were "zero". *Navarette v. Temple Indep. Sch. Dist.*, 706 S.W.2d 308, 309 (Tex.1986).

Generally, it is the province of the jury to determine the reasonable value of an attorney's services. *Tarleton State University v. K.A. Sparks Contractor, Inc.*, 695 S.W.2d 362, 367 (Tex.App.—Waco 1985, writ ref'd n.r.e.) (citing *Gulf Paving Co. v. Lofstedt*, 144 Tex. 17, 188 S.W.2d 155, 160 (Tex. 1945)). However, if the evidence is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon, it is taken as true, as a matter of law. *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990).

Further, in deciding whether the amount of reasonable attorney's fees were proven as a matter of law, the court can take into consideration whether the opposing party had the means and opportunity of disproving or impeaching the testimony and failed to do so. *Id.* Here, the testimony of the Bank's lawyer was uncontradicted and unimpeached. Brown had the opportunity to attempt to discredit or disprove the testimony, but he failed to do so. Therefore, the amount of the Bank's reasonable attorney's fees was established as a matter of law, and the trial court erred by failing to enter attorney's fees in favor of the Bank. The Bank's first cross-point is sustained.

We reform the judgment of the court below to award a deficiency of $11,778.38 and attorney's fees in favor of Galveston National Bank. Due to our disposition of Brown's

points of error, we need not address the Bank's remaining cross-point of error. TEX. R.APP. P. 90(a).

The judgment of the court below is affirmed as modified.