Opinion issued May 21, 2009







 







In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00496-CV






RONALD H. TONKIN, Appellant


V.


LEE ROY AMADOR, Appellee






On Appeal from County Civil Court at Law No. 3

Harris County, Texas

Trial Court Cause No. 862131






MEMORANDUM OPINION

 This appeal involves an attorney-client dispute concerning unpaid fees for legal
services rendered. Appellant and cross-appellee, Ronald H. Tonkin, appeals from a
jury trial award in favor of appellee and cross-appellant, Lee Roy Amador. In five
issues, Tonkin contends the trial court erred by (1) entering final judgment that
Tonkin recover $22,932.27 because Tonkin was entitled as a matter of law to recover
$42,024.96; (2) denying Tonkin's motion for judgment notwithstanding the verdict
(JNOV) because Tonkin was entitled as a matter of law to recover the amount stated
on the promissory note; (3) failing to award reasonable attorney's fees at trial; (4)
refusing reasonable attorney's fees for appeal; and (5) denying the motion for
reconsideration by the visiting judge of the sitting judge's denial of the motion for
JNOV. In the sole cross-issue, Amador contends the trial court erred by refusing to
submit a jury question on the affirmative defense of excessive demand. We affirm.

Background 

 In 2004, Amador hired Tonkin as his attorney to pursue an employment-discrimination claim against the Texas Department of Public Safety. In exchange for
the legal services provided by Tonkin, Amador agreed in writing to pay $350 per hour
for Tonkin's services, $150 per hour for services by Tonkin's associates, $75 per hour
for paralegal services, a $5000 retainer, and 25 percent of any damages awarded to
Amador if Amador succeeded in his discrimination claim. Amador made four
payments totaling $3495 but made no further payments.

 According to Tonkin's records, Tonkin worked on Amador's case for a total
of 38 hours. Associate and paralegal work totaled 85.75 hours. The total charge for
work and expenses related to Amador's case was $25,115.85, so Amador owed
$21,620.84 after crediting Amador's payments. For unexplained reasons, Tonkin
discounted the $21,620.84 debt to $18,245.84.

 According to Tonkin, in 2005, Amador signed a $18,245.84 promissory note
to Tonkin. But according to Amador, the promissory note was blank at the time he
signed it. Amador testified that he knew he owed some amount of money to Tonkin
but was unaware Tonkin was claiming the unpaid balance was over $18,000. Amador
made no payments on the promissory note. Amador also said that he never received
monthly statements, even though the agreement required them.

 Tonkin filed suit alleging four causes of action: breach of contract on both the
attorney-client agreement and the promissory note, fraud, and quantum meruit. 
Tonkin claimed $18,245.84 in damages relating to the breach of contract and
requested $16,680 in attorney's fees for trial plus $15,000 if the case was appealed
to an appellate court and $15,000 if the case was appealed to the Texas Supreme
Court. 

 The case proceeded to a three-day jury trial over which visiting Judge Ed
Landry presided while Judge Linda Storey was on leave. The jury awarded Tonkin
$9122.92 for breach of the attorney fee agreement, $1690.50 in quantum meruit,
$8340 in reasonable attorney's fees plus $7500 if the case was appealed to an
appellate court plus $7500 if the case was appealed to the Texas Supreme Court. The
jury determined that Tonkin and Amador agreed to the material terms of the
promissory note and that Amador breached that note, but the jury awarded Tonkin
nothing as a result of that breach. Tonkin submitted a motion for JNOV after Judge
Storey returned from leave, and Judge Storey denied the motion. Tonkin then made
a motion to refer his motion for reconsideration to visiting Judge Landry, which
Judge Storey also denied.

Amount of Damages

 In his first issue, Tonkin asserts the trial court erred by denying his motion for
JNOV because the evidence proved that Tonkin is entitled to $18,245.84 as a matter
of law, since that was the amount shown on the promissory note. 

 A motion for directed verdict or motion for judgment notwithstanding the
verdict preserves a legal-sufficiency challenge. See Cecil v. Smith, 804 S.W.2d 509,
510-11 (Tex. 1991). "The final test for legal sufficiency must always be whether the
evidence at trial would enable reasonable and fair-minded people to reach the verdict
under review." City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005). Legal-sufficiency review in the proper light must credit favorable evidence if reasonable
jurors could, and disregard contrary evidence unless reasonable jurors could not. Id.
If the evidence would enable reasonable and fair-minded people to differ in their
conclusions, then jurors must be allowed to do so. Id. at 822. A reviewing court
cannot substitute its judgment for that of the trier-of-fact, so long as the evidence falls
within this zone of reasonable disagreement. Id. Although the reviewing court must
consider evidence in the light most favorable to the verdict, and indulge every
reasonable inference that would support it, if the evidence allows only one inference,
neither jurors nor the reviewing court may disregard it. Id.

 Tonkin asserts that the jury's answers to questions five and six are dispositive,
and that they contradict the jury's answer to question seven. Question five asks, "Did
Ronald H. Tonkin and Lee Roy Amador agree to the material terms of the promissory
note made June 10, 2005 and as evidenced by [the attorney services agreement]?" 
The jury answered, "Yes." The charge, however, never defined "material term." 
Question 6 asks, "Did Lee Roy Amador breach the Promissory Note Agreement with
Ronald H. Tonkin made June 10, 2005 and evidenced by Plaintiff's Exhibit No. 28?" 
The jury answered, "Yes." Question seven asks, "What sum of money, if any, if paid
now in cash, would fairly and reasonably compensate Ronald H. Tonkin for his
damages, if any, that resulted from Lee Roy Amador's Breach of the Promissory Note
Agreement with Ronald H. Tonkin made June 10, 2005 and evidenced by Plaintiff's
Exhibit No. 28?" The jury answered, "$0." 

 Tonkin asserts that "[a]lthough there may be a dispute as to the validity or
terms of a promissory note, if one party does not dispute the amount of the deficiency
owed on the note, the deficiency is proven as a matter of law." Tonkin asserts that
by answering question five in the affirmative, the jury concluded that Amador agreed
to pay Tonkin $18,245.84. Tonkin contends the damage amount is $18,245.84,
because the jury concluded that Amador breached the note, and because it was
undisputed that Amador made no payments on the note. Tonkin therefore asserts the
jury's conclusion that Tonkin's damages for breach of contract were $0 is against the
great weight and preponderance of the evidence.

 Amador responds that the deficiency was not proven as a matter of law because
the amount of the deficiency was in dispute. Additionally, Amador points out that
during deliberations, the jury asked the trial court whether the total amount due under
the promissory note constituted a material term of the note. The trial court declined
to answer the question directly, instructing the jurors to only consider the evidence
introduced at trial. Based on the jury's question, Amador asserts that the jury did not
consider the amount of the note to be a material term.

 First, we address Amador's suggestion that the jury did not believe the amount
of the note was a material term when it answered question five in the affirmative. A
"material term" is "[a] contractual provision dealing with a significant issue such as
subject matter, price, payment, quantity, quality, duration, or the work to be done." 
Black's Law Dictionary (8th ed. 2004). Had this definition of "material term"
been given to the jury, the jury would necessarily have had to determine that the
amount on the note was a material term. However, no definition of "material term"
was given to the jury in question five, even after the jury specifically asked for a
definition when it was deliberating. Because question five used the phrase "material
terms of the promissory note" without defining for the jury what was meant by
"material terms," nothing in the jury charge guided the jury to consider the amount
on the note a material term of the note. Because Tonkin failed to define "material
terms" for the jury, he cannot now complain that the jury may have used its own
definition for that term, such as a definition that does not consider the amount on the
note to be a "material term." See Osterberg v. Peca, 12 S.W.3d 31, 55 (Tex. 2000)
("[I]f the trial court has 'to resolve a legal issue before the jury could properly
perform its fact-finding role[,] . . . a party must lodge an objection in time for the trial
court to make an appropriate ruling without having to order a new trial.'" (quoting
Holland v. Wal-Mart Stores, Inc., 1 S.W.3d 91, 94 (Tex. 1999))). In this case, Tonkin
had two opportunities to request a proper instruction: at the time the issue was first
presented to the jury, and again in response to the jury's question. Tonkin made no
such request.

 The jury's affirmative answer to question five that Tonkin and Amador agreed
to the material terms of the promissory note is consistent with the jury's answer to
question seven, where the jury determined that Tonkin had no damages as a result of
the breach. These answers are consistent with Amador's testimony that Tonkin filled
in the amount shown on the note after Amador signed the note. Considering that in
answering question five the jury did not believe the amount on the note was a
"material term" based on Amador's testimony that the amount was not included in the
note until after Amador signed it, the answer to question seven awarding no damages
is consistent with the answer in question five. 

 Second, Tonkin's contention that the promissory note is the amount of damages
he is due, is undermined by the jury's answers to questions one, two, and three. The
answers to questions one, two, and three established that Amador breached the
attorney services agreement, the breach of the attorney services agreement was not
excused, and $9122.92 would compensate Tonkin for the breach. We are bound by
the answers to questions one, two, and three because the answers to those questions
are unchallenged at trial and in this appeal. See Walling v. Metcalfe, 863 S.W.2d 56,
58 (Tex. 1993). The damages are $9122.92 for attorney's fees due to Tonkin
pursuant to the attorney services agreement between Tonkin and Amador. Because
Tonkin has not challenged that $9122.92 is the amount due for the services he
provided to Amador, he cannot now contend that the value of those services is, as a 
matter of law, the amount of $18,245.84 shown on the note.

 Based on the evidence in the record, we conclude the amount shown on the
note does not, as a matter of law, constitute proof of the amount due. We hold the
trial court did not err by denying Tonkin's motion for judgment notwithstanding the
verdict. We overrule Tonkin's first issue. 

Attorney's Fees

 In his second issue, Tonkin asserts the trial court erred by denying his motion
for JNOV because the evidence proved that Tonkin is entitled to recover, as a matter
of law, $16,680 as reasonable attorney's fees in preparation for trial; $15,000 as
reasonable attorney's fees in preparation for this appeal; and $15,000 as reasonable
attorney's fees in preparation for an appeal to the Texas Supreme Court. Tonkin
requested approximately double what the jury awarded. The jury found that Tonkin's
attorney's fees were $8340 to prepare for trial, $7500 to appeal to an appellate court,
and $7500 to appeal to the Texas Supreme Court. 

 "Generally, it is the province of the jury to determine the reasonable value of
an attorney's services. However, if the evidence is not contradicted by any other
witness, or attendant circumstances, and the same is clear, direct and positive, and
free from contradiction, inaccuracies, and circumstances tending to cast suspicion
thereon, it is taken as true, as a matter of law." Brown v. Bank of Galveston Nat'l
Ass'n, 930 S.W.2d 140, 145 (Tex. App.--Houston [14th Dist.] 1996), aff'd 963
S.W.2d 511 (Tex. 1998) (internal citations omitted); see Ragsdale v. Progressive
Voters League, 801 S.W.2d 880, 882 (Tex. 1990). In deciding whether attorney's
fees were proven as a matter of law, a court may consider whether the opposing party
had the means and opportunity to disprove or impeach the expert testimony but failed
to do so. Brown, 930 S.W.2d at 145.

 Amador contends the amount in controversy relative to the amount of requested
attorney's fees constitutes an "attendant circumstance tending to cast suspicion on
the uncontradicted evidence regarding the attorney's fee." Inwood N. Homeowner's
Ass'n v. Wilkes, 813 S.W.2d 156, 158 (Tex. App.--Houston [14th Dist.] 1991, no
writ). Tonkin attempts to distinguish Inwood from the present case by noting that
Inwood's requested attorney's fees were more than twice the amount in controversy. 
See id at 157-58. Although Tonkin did not request more in attorney's fees than the
amount in controversy, the amount of requested attorney's fees, $16,680, did
approach the amount in controversy, $18,245.84. When we take into account the
requested attorney's fees on appeal to this Court and to the Texas Supreme Court, the
potential total reaches $36,680, which is nearly double the amount in controversy. 

 Examining only the evidence that favors the jury's finding, we conclude the
disparity between the amount in controversy and amount of requested attorney's fees
was an attendant circumstance tending to cast suspicion on the uncontradicted
evidence regarding the attorney's fee. Brown, 930 S.W.2d at 145. We hold the trial
court did not err by refusing to grant Tonkin's motion for JNOV because it was
within the province of the jury to determine the reasonable amount of attorney's fees. 
We overrule Tonkin's second issue.

Motion for Reconsideration

 In his third issue, Tonkin asserts the trial court erred by denying his motion for
reconsideration directed to visiting Judge Landry after sitting Judge Storey denied
Tonkin's motion for JNOV because Judge Landry, not Judge Storey, presided at trial. 
To preserve error for appellate review, the complaining party must make a timely,
specific objection at the earliest possible opportunity. See Tex. R. App. P. 33.1(a). 
Tonkin did not request for Judge Landry to rule on the motion for JNOV until after
Judge Storey denied the motion for JNOV. For Tonkin's complaint to be timely, he
needed to present his motion for JNOV for Judge Landry's consideration only and
object to its consideration by Judge Storey. We hold Tonkin waived this issue by
failing to make a timely objection to the trial court requesting that Judge Landry rule
on the motion instead of Judge Storey. See id. We overrule Tonkin's third issue.

Excessive Demand

 In his sole cross-issue, Amador contends the trial court erred by denying his
request to submit a jury question on the affirmative defense of excessive demand.

 A trial court must submit a jury question if it is supported by some evidence,
but may refuse to do so if it is not supported by any evidence. See Tex. R. Civ. P.
278; Elbaor v. Smith, 845 S.W.2d 240, 243 (Tex. 1992). If there is some evidence to
support a jury question and the trial court does not submit the question, the trial court
commits reversible error. See Elbaor, 845 S.W.2d at 243. In determining whether
a trial court should have submitted a question to the jury, the reviewing court must
examine the record for evidence supporting submission of the question and ignore all
evidence to the contrary. See id. at 243. Conflicting evidence presents a fact
question for the jury. See Brown v. Goldstein, 685 S.W.2d 640, 641-42 (Tex. 1985). 

 Excessive demand is an affirmative defense to an award of attorney's fees. 
Kurtz v. Kurtz, 158 S.W.3d 12, 21 (Tex. App.--Houston [14th Dist.] 2004, pet.
denied). Generally, a creditor who makes an excessive claim upon a debtor is not
entitled to attorney's fees for subsequent litigation required to recover the debt. 
Findlay v. Cave, 611 S.W.2d 57, 58 (Tex. 1981) (citing Collingsworth v. King, 283
S.W.2d 30 (1955); Ingham v. Harrison, 224 S.W.2d 1019 (1949); Warrior
Constructors, Inc. v. Small Business Investment Co. of Houston, 536 S.W.2d 382
(Tex. Civ. App.--Houston [14th Dist.] 1976, no writ)). A demand is not excessive
simply because it is greater than the amount a jury later determines is actually due. 
Panizo v. Young Men's Christian Ass'n of Greater Houston Area, 938 S.W.2d 163,
169 (Tex. App.--Houston [1st Dist.] 1996, no writ). However, when the amount
claimed to be due is liquidated, "it may be very persuasive evidence." Findlay, 611
S.W.2d at 58. See generally Black's Law Dictionary (8th ed. 2004) (defining
"liquidated debt" as "[a] debt whose amount has been determined by agreement of the
parties or by operation of law"). The dispositive question in determining whether a
demand is excessive is whether the claimant acted unreasonably or in bad faith. See
Standard Constructors, Inc. v. Chevron Chem. Co., 101 S.W.3d 619, 627-28 (Tex.
App.--Houston [1st Dist.] 2003, pet. denied).

 Examining the record for evidence supporting submission of the excessive-demand question and ignoring all evidence to the contrary, we conclude that
Amador's evidence fails to raise a question of fact as to excessive demand by Tonkin. 
Although Amador contends the note was altered by the addition of the amount to the
face of the note after Amador signed the note, Tonkin's pleadings were consistent
with the amount shown on the note. Amador makes no showing of bad faith by
Tonkin. See id. Absent a showing of bad faith, a pleading for the amount shown on
the face of the note is not excessive as a matter of law. See id. We hold the trial court
did not err by refusing to submit a question to the jury on the issue of excessive
demand. We overrule Amador's sole cross-issue. Conclusion

 We affirm the judgment of the trial court.

 

 

 Elsa Alcala

 Justice


Panel consists of Justices Alcala, Hanks, and Wilson. (1)

1. The Honorable Davie L. Wilson, retired Justice, First Court of Appeals, participating
by assignment.