**Opinion issued June 25, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00507-CV

————————————

## IN RE GUARDIANSHIP OF KEITH A. HANKER, AN INCAPACITATED PERSON

---

**On Appeal from the Probate Court**
**Galveston County, Texas**
**Trial Court Case No. PR0067842**

---

## MEMORANDUM OPINION

Tracey Hanker, guardian of the person of Keith A. Hanker, appeals from a probate court order for payment of attorney's fees and expenses from Keith's estate. In two issues, she contends that the probate court abused its discretion in awarding an hourly rate of (1) $300 for the attorney and (2) $85 for the paralegal

when the only evidence of appropriate hourly rates was her attorney's "unchallenged testimony" of higher rates. We affirm.

## Background

In June 2005, the probate court appointed Tracey as guardian of the person of her brother Keith and Moody National Bank as guardian of Keith's estate. In April 2010, the court authorized Tracey to employ the Law Offices of Kenneth C. Kaye to represent her in carrying out her duties as Keith's guardian, and ordered that the fees and expenses be paid from Keith's estate "once approved by the Court." At that time, the court had a published and signed fee schedule entitled "Standards for Court Approval of Attorney Fee Petitions."[1]

In December 2011, Tracey filed her Application for Payment of Attorney's Fees, supported by the affidavit of her attorney, Kenneth C. Kaye. Kaye's affidavit stated that the amount of reasonable and necessary fees and expenses for almost eleven months[2] was $52,576.22 based on "reasonable" hourly rates of $350 to $400 for him and $125 to $150 for his paralegal. The application stated that

---

[1] The fee schedule, effective September 1, 2007, is not in the appellate record but was discussed at the hearing on attorney's fees and is available at http://www.co.galveston.tx.us/probate_court/documents/Stand-Court-Approv-Att-fees.pdf. We take judicial notice of the schedule. *See* TEX. R. EVID. 201 (providing for judicial notice of "adjudicative facts"); *Office of Pub. Util. Counsel v. Pub. Util. Comm'n*, 878 S.W.2d 598, 600 (Tex. 1994) (recognizing that court of appeals may take judicial notice for first time on appeal).

[2] The requested fees and expenses covered the time period from December 21, 2009, through November 6, 2011, and therefore included work performed by Kaye before and after the April 2010 court order authorizing his retention.

2

Keith's estate had become indebted to Kaye for this amount and that the court had "impliedly authorized" this payment in its April 2010 order. Attached to Kaye's affidavit was a statement itemizing the date and a general description of the services provided and expenses.

The bank objected to Tracey's application, specifically objecting that the requested hourly rate exceeded the standard rate set by the Galveston County probate court. Margaret T. Hindman, Keith's guardian ad litem, also objected to Tracey's application, objecting to approximately ninety hours of work performed by Kaye and his paralegal and approximately $8000 in expenses as unreasonable and unnecessary.

The probate court held a hearing on Tracey's application at which Kaye testified. He testified that his usual fee was between $350 and $400 an hour and that a reasonable fee for a paralegal with his paralegal's skills and qualifications was $125 an hour. Kaye testified about some of his firm's specific work and expenses. Neither the bank nor the guardian ad litem cross-examined Kaye or offered evidence. The guardian ad litem argued that a fee of $125 per hour for a paralegal was unreasonable and that certain fees and expenses were unreasonable and unnecessary. The bank "echo[ed] the guardian ad litem's concerns" about some of Kaye's work. The probate court took judicial notice of Tracey's application.

At the conclusion of the hearing, the probate court stated that "the auditor has gone through this accounting and I'm going to get with her for the final dollar amount." As to the attorney's fees, the court stated that "the maximum amount an attorney's going to be allowed is 300 an hour" and "the maximum amount for a legal assistant is 85 an hour" based on the court's published fee schedule applicable to the fees at issue. The court's fee schedule advised lawyers that the court owed a duty to the estates of wards to ensure that lawyers were paid only "reasonable and necessary" attorney's fees and expenses, and that those would be determined based on the factors set forth in rule 1.04 of the Rules of Professional Conduct. The fee schedule included a table "setting forth what the court believes is appropriate rates for court-appointed fiduciaries' attorney's fees" based on an attorney's years of experience. The schedule provided that while there were circumstances in which the trial court could deviate from these ranges, in the typical case an attorney with eleven or more years of experience—like Kaye—had a "court-approved rate" of "$200-300/ hour" and a paralegal's rate was $45 to $85 per hour unless the paralegal had certification in estate planning and probate law.

The probate court also concluded that some of the work for which Tracey sought reimbursement was "guardianship work" rather than "attorney's work" and required prior court approval. The court signed an order for payment of fees and expenses in the amount of $24,449.96, finding that attorney's fees and expenses in

4

that amount were "reasonable, necessary, and required for the protection and welfare of Keith A. Hanker and should be paid . . . ."[3] This appeal followed.

## Payment of Attorney's and Paralegal's Fees

In her first issue, Tracey contends that the probate court abused its discretion as a matter of law in awarding attorney's fees at $300 per hour because the only evidence of an appropriate rate was Kaye's unchallenged testimony that $350 to $400 per hour was reasonable and necessary. In her second issue, Tracey similarly contends that the probate court abused its discretion as a matter of law in awarding paralegal fees at $85 per hour because the only evidence of an appropriate rate was Kaye's unchallenged testimony that $125 per hour was reasonable and necessary. Tracey does not challenge any reduction by the probate court in the number of Kaye's and his paralegal's hours for which she sought payment.[4]

---

[3] The clerk's record includes Kaye's statement with handwritten calculations made by the probate court judge or auditor. These notes indicate that the court reduced both the fees and expenses. The $24,449.96 for fees was calculated based on (1) sixty-eight and one-half hours of Kaye's time at $300 per hour, (2) thirty-five hours of paralegal time at $85 per hour, and (3) expenses of $924.96. The probate court order, however, does not state a specific hourly rate for attorney's fees or paralegal fees.

[4] Tracey requests that we reverse the probate court order and remand the case to the probate court to determine an hourly rate within the range to which Kaye testified and multiply that rate by the number of hours that the court found appropriate. She also requests that we render judgment as a matter of law for paralegal fees based on a rate of $125 per hour multiplied by the number of hours the court found appropriate.

## A. Standard of review

We review the trial court's approval of attorney's fees incurred by a guardian for an abuse of discretion. *Epstein v. Hutchison*, 175 S.W.3d 805, 807 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (citing *State ex rel. Tex. Dep't of Mental Health & Mental Retardation v. Ellison,* 914 S.W.2d 679, 682–683 (Tex. App.—Austin 1996, no writ)); *see Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998) ("We review a trial court's granting of attorney's fees for an abuse of discretion."). A trial court abuses its discretion only if it reaches a decision so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law or clearly fails to correctly analyze or apply the law. *Intercont'l Terminals Co., LLC v. Vopak N. Am., Inc.*, 354 S.W.3d 887, 892 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *In re Olshan Found. Repair Co., LLC,* 328 S.W.3d 883, 888 (Tex.2010)). We may not substitute our judgment for the trial judge's. *Id.* (citing *New Process Steel Corp. v. Steel Corp. of Tex.,* 638 S.W.2d 522, 524 (Tex. App.—Houston [1st Dist.] 1982, no writ)).

## B. Recovery of attorney's and paralegal fees under the Probate Code

Section 666 of the Probate Code provides for reimbursement of a guardian's expenses, including attorney's fees:

> A guardian is entitled to be reimbursed from the guardianship estate for all necessary and reasonable expenses incurred in performing any duty as a guardian, including reimbursement for the payment of reasonable attorney's fees necessarily incurred by the guardian in

connection with the management of the estate or any other matter in the guardianship.

TEX. PROB. CODE ANN. § 666 (West Supp. 2012); *see Epstein*, 175 S.W.3d at 808 (stating that section 666 provides for reimbursement of guardian's expenses and considers attorney's fees to be expense); *see also Woollett v. Matyastik*, 23 S.W.3d 48, 52 (Tex. App.—Austin 2000, pet. denied) ("Attorney's fees incurred by a guardian may be a necessary and reasonable expense incurred by the guardian in executing his duties as a guardian."). The Probate Code further provides that all expenses charged be "(1) in writing, showing specifically each item of expense and the date of the expense; (2) verified by affidavit of the guardian; (3) filed with the clerk; and (4) paid only if the payment is authorized by court order." TEX. PROB. CODE ANN. § 667 (West 2003).

In addition to the Probate Code requirements for payment of expenses, requests for attorney's fees in general must meet certain requirements. *Woollett*, 23 S.W.3d at 52. First, even when the trial court is the factfinder, expert testimony is required to support an attorney's fees award; a court does not have authority to adjudicate the reasonableness of attorney's fees on judicial knowledge without the benefit of evidence. *Id.* at 53.[5] Second, the expert testimony should address both

---

[5] Section 38.004 of the Civil Practice and Remedies Code, which authorizes a trial court to take judicial notice of the usual and customary attorney's fees and of the contents of the case file in certain circumstances, does not apply to this case. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.004 (West 2008).

the hourly rate and the hours expended. *Id*. Third, the parties do not dispute——and we agree——that the trial court should consider the factors set forth in rule 1.04 of the Rules of Professional Conduct: (1) the time and labor involved, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) time limitations imposed by the client or the circumstances; (6) the nature and length of the professional responsibility with the client; (7) the experience, reputation and ability of lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.04, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (West 2013) (Tex. State Bar R. art. 10, § 9); *see also Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (applying rule 1.04 factors in breach of contract claim); *Alford v. Whaley*, 794 S.W.2d 920, 925 (Tex. App.—Houston [1st Dist.] 1990, no writ) (applying similar factors in determining reasonableness of ad litem fees). The trier of fact can consider these factors—often called the *Arthur Andersen* factors—as well as counsel's expertise in arriving at a

reasonable amount of attorney's fees. *Powell Elec. Sys., Inc. v. Hewlett Packard Co.*, 356 S.W.3d 113, 128 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

An attorney's fee award may include compensation for work performed by paralegals. *See El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 763 (Tex. 2012) (setting out requirements for proof of work done by paralegals). In order to recover paralegal fees, the evidence should show: (1) the paralegal's qualifications to perform substantive legal work, (2) that the paralegal performed substantive legal work under an attorney's direction and supervision, (3) the nature of the legal work performed, (4) the paralegal's hourly rate, and (5) the number of hours the paralegal expended. *All Seasons Window & Door Mfg., Inc. v. Red Dot Corp.*, 181 S.W.3d 490, 504 (Tex. App.—Texarkana 2005, no pet.) (citing *Multi-Moto Corp. v. ITT Commercial Fin. Corp.*, 806 S.W.2d 560, 570 (Tex. App.—Dallas 1990, writ denied)); *see Gill Sav. Ass'n v. Int'l Supply Co.*, 759 S.W.2d 697, 703 (Tex. App.—Dallas 1988, writ denied). "Paralegal fees have been denied absent such proof." *El Apple I*, 370 S.W.3d at 763 (citing *Moody v. EMC Servs., Inc.*, 828 S.W.2d 237, 248 (Tex. App.—Houston [14th Dist.] 1992, writ denied)).

**C.    Kaye's testimony was not conclusive on the appropriate hourly rates**

Tracey contends that the probate court was required to accept the hourly rates to which Kaye testified because his testimony was unchallenged and, thus, conclusive.

Generally, the determination of reasonable attorney's fees is a fact question and the testimony of an interested witness, though not contradicted, does no more than raise a fact issue for the factfinder to determine. *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990) (concluding that award of $150 in attorney's fees was abuse of discretion when uncontroverted testimony was that reasonable fee was $22,500); *see also Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547 (Tex. 2009) ("The reasonableness of attorney's fees is ordinarily left to the factfinder, and a reviewing court may not substitute its judgment for the [factfinder's]."); *Powell Elec. Sys., Inc.*, 356 S.W.3d at 128 (stating that expert testimony regarding attorney's fees is not conclusive and trier of fact is not bound by such testimony). Attorney's fees, however, may be proven as a matter of law in some cases by uncontroverted expert testimony. *Ragsdale*, 801 S.W.3d at 882. To fit within this exception to the general rule, the uncontroverted expert testimony must be (1) readily controvertible if untrue; (2) clear, direct, and positive; and (3) uncontradicted by the "attendant circumstances." *Id.*; *see also Rosenblatt v. Freedom Life Ins. Co. of Am.*, 240 S.W.3d 315, 321 (Tex. App.—Houston [1st

10

Dist.] 2007, no pet.) ("[T]he uncontroverted testimony of an interested witness will establish that attorneys' fees sought are reasonable and necessary as a matter of law . . . but only if the following conditions exist: (1) the testimony could readily be controverted if untrue; (2) the testimony is clear, direct, and positive; and (3) there are no circumstances that tend to discredit or impeach the testimony."); *Brown v. Bank of Galveston Nat'l Ass'n*, 930 S.W.2d 140, 145 (Tex. App.—Houston [14th Dist.] 1996), *aff'd*, 963 S.W.2d 511 (Tex. 1998) (citing *Ragsdale*, 801 S.W.2d at 882) ("[I]f the evidence is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon, it is taken as true, as a matter of law."). These attendant circumstances may indicate that the claimed attorney's fees are unreasonable or incredible. *Ragsdale*, 801 S.W.2d at 882. The Texas Supreme Court has since noted that even if the testimony is uncontroverted, a fact issue might be presented based on the *Arthur Andersen* factors. *Patrick W.Y. Tam Trust*, 296 S.W.3d at 548.

Relying on *Brown v. Bank of Galveston*, Tracey contends that the guardian ad litem's and Moody Bank's failure to challenge Kaye's testimony established the hourly rates as a matter of law. *See Brown*, 930 S.W.2d at 145. In *Brown*, the court of appeals concluded that the bank established its reasonable attorney's fees as a matter of law when its lawyer's testimony was "uncontradicted and unimpeached"

11

and the plaintiff did not discredit or disprove the testimony although he had the opportunity. *Id.*; *see Brown v. Bank of Galveston Nat'l Ass'n*, 963 S.W.2d 511, 515 (Tex. 1998), *abrogated on other grounds by Ford Motor Co. v. Ledesma*, 242 S.W.2d 32 (Tex. 2007) (holding that court of appeals properly awarded attorney's fees because bank established amount). A failure to discredit or disprove testimony, however, is only one circumstance a court may consider in deciding whether testimony raises a fact issue or is accepted as true as a matter of law. *Rosenblatt*, 240 S.W.3d at 321. Other "attendant circumstances" may raise a fact issue. For example, our sister court found that the "attendant circumstances" in a case created a fact issue despite uncontroverted testimony in light of two *Arthur Andersen* factors: "the simplicity of the issues involved and the results obtained." *Garza v. Slaughter*, 331 S.W.3d 43, 46 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

Tracey presented the only evidence on attorney's fees through her attorney. In his affidavit, Kaye stated that a reasonable hourly rate for him in this case was between $350 to $400 per hour "taking into account each and every one of the factors mandated to be considered by attorneys in Texas" and that a reasonable hourly rate for his paralegal was between $125 and $150 per hour. The total amount of fees and expenses would be $52,567.22 if the lower hourly rates were used and $59,163.72 if the higher hourly rates were used. At the hearing, Kaye

12

testified that the reasonable hourly rate for his paralegal was $125 per hour, for a total amount of fees and expenses of $57,413.72 if his higher hourly rate was used.

We conclude that Kaye's testimony only raised a fact issue for the probate court given the "attendant circumstances" surrounding his work. The customary fee for representing a ward in a guardianship proceeding in Galveston County was set forth in the probate court's fee schedule, a schedule that was in effect when the court authorized Tracey to employ Kaye to represent her in carrying out her duties as guardian. The court's fee schedule highlights the importance of the lawyer's experience and expertise, and offers higher rates for lawyers with probate law certification or particular expertise in probate matters. Kaye made no showing of either and did not provide any testimony about his paralegal's skills and qualifications. He also did not provide clear and unequivocal testimony about the results he obtained for much of his work. The determination of the fee in a guardianship proceeding presents a unique attorney's fee inquiry: the probate judge's responsibilities include protection of the ward. *See In re Guardianship of Glasser*, 297 S.W.3d 369, 376 (Tex. App.—San Antonio 2009, no pet.) ("The probate court has the ultimate responsibility for protection of an incapacitated person's best interest."); *see also Epstein*, 175 S.W.3d at 809 (describing probate court's approval of only reasonable and necessary attorney's fees that guardian incurred as "ultimate safeguard"). And, the fees to be paid to the guardian's lawyer

13

reduce the guardianship estate. *See* TEX. PROB. CODE ANN. § 666 (West 2003) (authorizing reimbursement for payment of "reasonable attorney's fees necessarily incurred" from guardianship estate). We cannot conclude that a probate judge in a guardianship proceeding who hears a guardian ad litem's objection to an attorney's fee to be paid from the estate abuses its discretion by drawing on her knowledge of the case, review of the court file, and her experience in other guardianship proceedings in determining whether a requested fee is reasonable. *See generally Alford*, 794 S.W.2d at 925 ("[A]n appellate court has the authority in looking at the entire record to draw on the common knowledge of the justices of the court and their experience as lawyers and judges to view the matter in light of the testimony, the record, and the amount in controversy.").

Finally, Kaye's testimony about his agreement with Tracey was not clear and unequivocal. Kaye testified that he was hired on an hourly fee basis, but did not testify that Tracey agreed to his requested hourly rates. His fee statement attached to his affidavit does not show any hourly rates or show a total amount due for fees and expenses. We conclude that Kaye's testimony was not conclusive testimony that established his and his paralegal's hourly rates as a matter of law.

We conclude that Tracey did not conclusively prove hourly rates for attorney's fees as a matter of law and, thus, has not demonstrated that the probate court abused its discretion. Other than her challenge based on hourly rates, Tracey

14

does not challenge the order for payment of $24,449.96 as fees and expenses "reasonable, necessary and required" for Keith's protection and welfare and does not complain of the probate court's failure to order payment for all services and expenses submitted.

We overrule Tracey's two issues on appeal.

## Conclusion

Having overruled both of Tracey's issues, we affirm the probate court's order.

Harvey Brown
Justice

Panel consists of Justices Jennings, Brown, and Huddle.